## MAYE *et al. v.* TAPPAN *et al.*

WHEN two mining claims adjoin each other, and the owners of one claim work across the dividing line and take away gold-bearing.earth from the other claim, the fact that they did so in ignorance of the location of the dividing line, is no excuse or justification, and it is error to admit evidence of such ignorance as an excuse for the trespass or in mitigation of damages.

In an action of trespass to recover damages for injury to a mining claim, the right of the plaintiffs to recover the damages which they have actually sustained, is not affected by the fact that the trespass was not willful in its character.

The fact that plaintiff tells defendant that he did not know where the line ran, but that defendant need not be uneasy, for he was not near the line, and had fifty feet still to run before he could reach it, does not amount to a license or permission from plaintiff for defendant to work on plaintiff's ground; nor does it estop plaintiff from recovering the damage he has actually sustained.

When a party has the means of ascertaining a boundary line, he is guilty of negligence in not ascertaining its location.

Where a trespass is committed by entering upon and taking away the gold-bearing earth from a mining claim, and the same is not done willfully or with a malicious intent, and the action is brought for an injury to the land itself, the true measure of damages is the value of the gold-bearing earth at the time it is separated from the surrounding soil, and becomes a chattel.

In estimating the damages, the expense of separating the earth from the gold after it is moved to the place of washing, is to be deducted from the value of the gold.

If, however, a demand is made for the possession of the gold after it is separated from the earth, and an action is then brought for the conversion of the chattel, the measure of damages would be the value of the gold detained.

APPEAL from the District Court, Eleventh Judicial District, Placer County.

The facts are stated in the opinion of the Court.

*Tuttle & Fellows*, for Appellants.

*P. L. Edwards* and *H. O. Beatty*, for Respondents.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. and NORTON, J. concurring.

This is an action to recover damages, in the sum of $2,000, which the plaintiffs allege they sustained, by reason of the acts of the defendants, in entering upon the mining claim of the plaintiffs, and taking away gold and gold-bearing earth of that value.    The

Maye *v.* Tappan.

case was tried by a jury, who found for the plaintiffs damages in the sum of fifty dollars, for which amount judgment was rendered, and the plaintiffs appeal therefrom, and from an order refusing a new trial.

The appellants contend that they were entitled to a judgment for the sum claimed in their complaint upon the pleadings. It does not appear, however, that they made any motion for judgment on the pleading in the Court below; and it is doubtful, therefore, whether the question can be raised in this Court for the first time. But the answer of the defendants was sufficient to raise issues for trial, and this objection, therefore, is not well taken.

It appears that the plaintiffs and defendants are the owners of adjoining mining claims, which are worked by deep under-ground tunnels. The fact that the defendants mined over the dividing line between the claims, and worked out a portion of the mining ground of the plaintiffs, is not disputed; but they contend that it was not done willfully or intentionally, but in ignorance of the locality of the dividing line, between the claims, under the surface; and that they were led to work over the line, by the representations of one of the plaintiffs, as to its locality, in relation to the tunnel and the place they were working. On the trial, the plaintiffs objected to all evidence showing that the defendants were ignorant of the location of this dividing line; but the Court overruled the objection, and permitted several of the defendants to testify to those facts, and this is assigned as error. The plaintiffs, in this action, were not entitled to vindictive or exemplary damages, but could only recover the damages they had actually sustained by being deprived of the gold or gold-bearing earth taken by the defendants from their mining ground. It follows, that the question whether the defendants acted willfully and maliciously, or ignorantly and innocently, in digging up and taking away the gold-bearing earth, is entirely immaterial. The defendants took property belonging to the plaintiffs, and have thereby injured them to a certain amount; and that amount is made no greater nor less by the fact that the act was done without any malicious intent. The right of the plaintiffs to recover damages, or the amount of the damages to which they may be entitled, is not affected by the fact that the trespass was not

willful in its character.   The ruling of the Court upon this question was therefore erroneous.

It appears, that when the defendants first commenced working in the vicinity of the ground belonging to the plaintiffs, one of the plaintiffs went into defendants' tunnel, where they were working, and he was asked if he knew where the line was, to which he replied that he did not know exactly.   Afterwards, on the same day, the same plaintiff, Maye, stated to defendants that they need not be uneasy; that they were not near the line, and had forty or fifty feet still to run before they would reach it; and showed them a map of the plaintiffs' claim.   The witness, who was one of the defendants, also stated that they only worked twenty-five feet further, and would not have done even that but for Maye's statement that they had fifty feet to go.   Soon after this conversation, the defendants employed a surveyor to run the line, and they then learned that they had worked over on the plaintiffs' claim.   This state of facts, the defendants claim, amounts to a license or permission from the plaintiffs to work the ground; or they estop the plaintiffs from recovering the damages caused by the working of the ground.   It is clear that the facts do not show a license or permission to work the mining ground of the plaintiffs.   They show mutual ignorance on the part of one of the plaintiffs, Maye, and the defendants, as to the location of the line in the tunnel; but they do not show any permission or consent, or even intention or willingness on his part, that the defendants might work the plaintiffs' mining ground.   Whether or not the permission of one of the plaintiffs would bind the others, it is unnecessary to determine.

The rules relating to the doctrine of estoppel with respect to the title of property, laid down by this Court in *Boggs* v. *Merced Mining Co.* (14 Cal. 367), are as follows: 1st. That the party making the admission by his declarations or conduct was apprised of the true state of his own title.   2d. That he made the admission with express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud.   3d. That the other party was not only destitute of all knowledge, but of the means of acquiring such knowledge; and, 4th. That he relied directly upon such admission, and will be injured by allowing its truth to be dis-

proved.   It is evident that the facts of the present case do not bring it within the rules thus laid down.   Maye, who made the statements, expressly stated that he did not know where the line ran in the tunnel; 'thus showing that he was not apprised of the true location of the plaintiffs' line under ground.   His statements were, therefore, more in the nature of the expression of an opinion than an admission of facts.   The location of the line on the surface of the ground was well known to both parties, or could have been readily ascertained; and the defendants, therefore, had the means of ascertaining, by means of a survey, the exact location of the line in the tunnel, and they were guilty of negligence in not informing themselves of this fact, especially when they knew that Maye did not himself know exactly where the line ran.   The defendants had no right, therefore, to rely upon this statement of Maye's opinion, when he distinctly stated his own ignorance of the fact. They cannot therefore claim that it would operate as a fraud upon them to permit the plaintiffs to show the true location of the line, and to recover the damages caused by the trespass, that being the foundation of the doctrine of estoppel.   It may be a question whether the relation of the plaintiffs to each other was such that the admissions of one would operate as an estoppel against the others; but that is a point not necessary to determine.

Upon these points, the Court gave the jury the following instruction: "If the jury believe from the evidence that the defendants were ignorant of the boundary lines between the plaintiffs and defendants, and in such ignorance, if they entered upon the ground of the plaintiffs in good faith, believing it to be their own, and were induced to do so by the acts and representations of plaintiffs themselves, then they will find for the defendants."   This instruction was clearly erroneous.   It does not correctly state the law upon this subject, as has already been shown.

The Court also gave the following instruction, which the appellants assign as error: "If the jury believe, from the testimony, that defendants entered upon plaintiffs' ground in good faith, believing it to be their own ground, and were misled into so doing by the acts or declarations of plaintiffs, then if the plaintiffs recover at all, they can only recover the net sums taken from plaintiffs'

ground, over and above the expense of extracting it." The plaintiffs claim that the rule of damages in such cases is the value of the property after it is separated from the freehold and becomes a chattel, or the value of the gold after it is extracted from the earth.

In the case of *Martin* v. *Porter* (5 M. & W. 352), which was an action of trespass *quare clausum fregit*, for entering a certain coal mine and carrying away the coal, and converting and disposing thereof to the use of the defendant, the plaintiff claimed that he had a right to hold the defendant liable for the value of the coal where gotten, and where it first existed as a chattel, without any deduction for the expense of getting it. The Judge at *nisi prius* held that in an action of trover, the plaintiff would have been entitled to the value of the coal as a chattel, either at the mouth of the pit or on the canal bank, if he had demanded it at either place; and the defendant had converted it, without allowing the latter anything for having worked and brought it there; but the action being trespass, he was entitled to the value of the coal as a chattel at the time when the defendant began to take it away, that is, as soon as it existed as a chattel, which value would be the sale price at the pit's mouth, after deducting the expense of carrying the coals from the place in the mine where they were got to the pit's mouth; and the jury found a verdict accordingly. The defendant moved the Court to reduce the damages to the average estimated value of the coal as lying undisturbed in its native bed. The Court refused the motion, holding that the rule had been correctly laid down by the Judge at the trial. The same rule was also adopted in *Wild* v. *Holt* (9 M. & W. 672), and *Morgan* v. *Powell* (3 Q. B. 278).

In *Ward* v. *Morewood* (cited in 3 Queen's Bench, 440), it was held by Parke, Baron, at *nisi prius*, that if there was fraud or negligence on the part of the defendant, they might give as damages, under the count in trover, the value of the coals at the time they first became chattels, on the principle laid down in *Martin* v. *Porter*; but if they thought that the defendant was not guilty of fraud or negligence, but acted fairly and honestly, in the full belief that he had a right to do what he did, they might give the fair value of the coal as if the coal-field had been purchased from the plaintiff; and the jury adopted the latter estimate.

The case of *Cushing* v. *Longfellow* (26 Maine, 306), was an action for *trespass* for cutting and removing mill logs. The plaintiff claimed the right to recover the value of the logs at a certain landing-place, and the defendant contended that the damages should be estimated according to the value of the timber when standing; but the Court held that the plaintiffs should recover the value of the logs as they were the moment after they were severed from the freehold. They also held, that the plaintiff might have demanded the logs at another place; and in an action of trover, have recovered the value of them there.

In *Baker* v. *Wheeler* (8 Wend. 505), which was an action of *trover*, it was held, that the party whose property has been tortiously taken, is entitled to the enhanced value until it has been so changed as to alter the title; and it was held to apply to saw logs converted into boards and plank; timber made into shingles, and wood converted into coal. (*Brown* v. *Sax*, 7 Cowen, 95; *Babcock* v. *Gill*, 10 J. R. 237; *Curtis* v. *Groat*, 7 Id. 168; 5 Id. 348.)

It will be noticed that the rule of damages in such cases depends, to some extent, upon the *form* of the action; whether the action is for an injury to the land itself, or for the conversion of a chattel which had been severed from the land. The complaint in this case alleges that the defendants, at divers times, wrongfully entered upon a portion of plaintiffs' mining claim, and extracted the gold and gold-bearing earth from a portion thereof, which gold and gold-bearing earth they wrongfully carried away and converted to their own use; and the value of the gold thus carried away is alleged to have been two thousand dollars. No demand of the possession of the gold after it was separated from the earth appears to have been made upon the defendants, and the gravamen of the action appears to be the injury done to the land itself by the acts of the defendants. The proper rule for damages, in a case like the present, is the value of the gold-bearing earth at the time it was separated from the surrounding soil and became a chattel. This seems to be a just and proper rule, and one established by the decisions upon this question. In estimating these damages, the expense of extracting the gold and separating it from the earth, after it is first moved

from its original location, is to be deducted from the value of the gold taken out of the mining ground of the plaintiffs. The instruction of the Court upon this point is very nearly correct, but it is proper that the rule should be accurately stated to the jury. The difference in the amount of damages may or may not be great, but we have no means of determining whether it is large or small.

The judgment is reversed and the cause remanded.