EMORY F. SKINNER, APPELLANT, vs. JOHN PINNEY, APPELLEE.

1. The statute of this State provides that a certified copy of a deed duly recorded shall be received in evidence " in the same manner as the original thereof may be," and with the like force and effect. The execution of an original deed duly acknowledged, presented in evidence by a party claiming under it, must be proved, and therefore a certified copy is not *per se* evidence of the due execution of the original.

2. The statute does not make the acknowledgment or proof of a deed for the purpose of registration evidence of its due execution for any other purpose. (Hogans vs. Carruth. 18 Florida, 593.)

3. When A. trespasses upon land in the possession of B. and cuts down trees, making them into logs and takes them away from the land, B. may maintain an action of trover for the conversion of the logs.

4. A trespasser acquires no property in such logs by having bestowed his labor upon them, though their value is enhanced by the labor.

5. The measure of damages in an action of trover for logs taken from land in the plaintiff's possession is the value of the logs at the time and place of conversion with interest. The conversion is complete when the logs are taken away from the premises.

6. Proof of possession of land by the plaintiff is sufficient to enable him to maintain trover for logs taken from the land.

7. A defendant in trover cannot set up title to the property in a third person, unless he connects himself in some manner with that title.

Appeal from the Circuit Court for Escambia county.

This was an action of trover, brought by appellee against appellant for the conversion of a quantity of logs. Defendant pleaded not guilty, and further that the plaintiff was not the owner of the logs nor entitled to the possession. The cause was tried in April, 1882.

Plaintiff testified that he owned land on Garzon's Point, in Santa Rosa county, and had owned it for twenty-three years; was put in possession of it before the war by the United States Marshal as the result of a suit by plaintiff in the United States Court to recover the land, and has been in possession by agents ever since. Joseph Bonifay was his agent up to two or three years ago, and Peter Schaff has been since in possession for plaintiff. The bill of exceptions recites : " And the plaintiff further to prove the issues in his behalf by his attorney, after having, in connection with his possession of said tract of land as aforesaid, made proof to the jury that the title to said tract of land had ceased to be in the United States and become vested in one Manuel Bonifay by act of Congress, offered, and having offered and read to the jury deeds deraigning the title of said land from said Bonifay to one J. L. White," offered in evidence certified copy of the record of a paper purporting to be a deed from Joseph L. White to John Pinney of the said lands, dated 24th November, 1858. The paper was certified by the Clerk of Santa Rosa county. The defendant objected to the reception of this paper in evidence upon the ground that the plaintiff had not offered proof of the execution of the deed of which it purported to be a certified copy. The objection was overruled and the paper received, to which ruling an exception was taken.

Plaintiff further proved by Peter Schaff that he had resided on Garzon's Point, on land belonging to the plaintiff,

about seven years with his father-in-law, who, during that time, had been the agent of the plaintiff to look after the lands, and that since the death of his father-in-law, two or three years ago, he had been the agent of the plaintiff for the same purpose. He lived upon and had enclosed fifteen acres in one corner of the Pinney land, and other persons had enclosed about 25 acres, and the rest was unenclosed ; that prior to December, 1880, defendant begun to cut timber logs on Pinney's land. He warned him not to cut timber there, and that the land was Pinney's. He continued cutting, and cut and hauled to the waters of Blackwater and Escambia bays, on the sides of Garzon's Point, 1,423 logs, where they were put into the water and taken away by defendant's tow-boat. He had measured 300 or 400 of the logs and they averaged 200 feet board measure, and he estimated the balance to average the same measurement.

George W. Wright testified that logs were of the value of $6 to $7 per thousand superficial feet, board measure, in the water of Blackwater bay, at Garzon's Point, in December, 1881. Defendant objected to the question eliciting this testimony on the ground that the value at that place was not the measure of damages as against the defendant and was irrelevant, and the objection was overruled.

The defendant testified that he claimed the land on Garzon's Point claimed by the plaintiff where the trees were cut, and that it was known in the United States surveys as Sections 20, 21, 22, 24, 25 and parts of Sections 27 and 28, T. 1, R. 28, W., and that he claimed the lands under certain certificates of sale and deeds of the Commissioner of Lands and Immigration and the Trustees of the Internal Improvement Fund, dated in 1880 and 1881, before the cutting of the timber.

Defendant offered to prove by himself that on learning

that the said land contained timber trees he endeavored to find to whom the land belonged, and found that the records of the county did not show the ownership; that he was informed by the Register of Public Lands that they belonged to the State of Florida, as shown by a map sent him by the Register upon which the lands on Garzon's Point were laid out in townships and sections according to the United States surveys, and the sections were marked on the map as State property; and he then bought the lands from the Trustees of the Internal Improvement Fund. The plaintiff objected to the testimony offered as not admissible to affect the question of damages, and the court excluded the testimony.

Defendant also offered to prove the market value of the standing trees at the time they were cut and hauled away, and upon plaintiff's objection the court excluded the testimony. Defendant also offered to show the market value of the trees after they were cut at the time and place of cutting, which testimony was excluded by the court. Defendant further offered to prove by Henry Lewis, for the purpose of establishing a measure of damages, the market value of the logs in the waters of Pensacola and Escambia bays, when and where placed by defendant, to have been $5 per thousand, and that the expense of cutting and hauling from the place where cut to those waters was $4.50, and the expense of cutting was ten cents per tree; but the plaintiff objected, and the court refused to receive the testimony. To these several rulings defendant excepted.

The Judge charged the jury "that the measure of damages in this action under the count in trover was the value of the property at the time and place of conversion, and that if the jury found that the defendant cut the logs of plaintiff on plaintiff's land and hauled them off of said land the conversion was complete only when the logs left

the plaintiff's land, and the jury should find against the defendant for the market value of such logs at such time and place, with interest to the time of the verdict."

To this the defendant excepted. The jury found for the plaintiff, and assessed the damages at $2,047.36, and defendant appealed.

The errors assigned are:

1. The admission in evidence of the certified copy of the deed from J. L. White to John Pinney.

2. The admission of the testimony of Geo. L. Wright as to the market value of the logs in the water of Blackwater bay at Garzon's point.

3 and 4. The exclusion of the testimony of plaintiff and Lewis: and 5. The charge of the court.

*W. A. Blount* for Appellant.

*John C. Avery* and *John A. Henderson* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court.

Under the statute of this State (McClellan's Dig., 514, S. 8,) a certified copy of a record of a deed is not made evidence without other proof of the original than the proof or acknowledgment taken before the acknowledging officer. The statute says that such certified copy shall be received in evidence *in the same manner* as the original thereof may be and with the like force and effect. How is an original deed of conveyance by a third person duly acknowledged made evidence? The rule is well established that a deed offered in evidence by a party claiming under it must be proved by the subscribing witnesses if they are living and within the reach of the process of the court, or, if their testimony is not so obtainable, by proving their hand-writing or that of one of them. (Greenl. Ev., §569, *et seq.*) There

are exceptions (applicable to circumstances not existing in the present case) mentioned by Greenleaf and other writers, which need not be noticed here.

The statute relating to the acknowledgment (McClellan, 215, S. 6,) says that "in order to procure the recording of such conveyance" it must be acknowledged or proved in a certain manner, but we have no law substituting the acknowledgment or proof for the purpose of recording, as evidence of due execution before a court, for the usual methods of proof.

How can it be contended that a certified copy of the record is evidence without other proof, while the original duly acknowledged or proved for the purpose of record and recorded, is not evidence, unless its execution is duly proved by the subscribing witnesses? To so hold would make a certified copy of a forged deed and a forged acknowledgment better evidence than a genuine duly acknowledged original deed, and without the sanction of a statute. So long as the statute does not provide that the acknowledgment duly certified shall be deemed evidence of the genuineness of the signatures of the grantor and the witnesses, the courts cannot make them so without asserting the power of legislation. According to the statute a certified copy of the record of the deed is to be received in evidence *in like manner* as though the original were produced, and not otherwise.

In the case of Hogans' Heirs vs. Carruth, 18 Fla., 593, this court said that "the certificate or acknowledgment is not a common law certificate, but is altogether statutory in its character and can serve no other purpose under the statute than that declared by the statute, which is to authorize a record thereof in the office assigned by law for that purpose," and "where a different rule prevails it is because the statute in letter or effect makes deeds thus ac-

knowledged and recorded evidence." See authorities cited in that case ; and note 479, p. 582, Vol. 2, Cowen & Hill's Notes to 4th Am. Ed. of Phil. Ev.

The result is that under our statute a certified copy of a private deed duly recorded may be received as evidence only where the original is duly proved to have been executed, or as secondary evidence. Until the Legislature shall declare that the certificate of the officer taking an acknowledgment shall be deemed sufficient proof of due execution, otherwise than for the purpose of record, we cannot change this rule of evidence.

The plaintiff has here shown, however, that he was in possession as a purchaser and under claim of title and had been in such possession for twenty-three years, his agents having resided thereon and "looking after " them. The lands had been granted to his predecessor by an act of Congress of May 23, 1828. The defendant commenced cutting timber trees on this land in December, 1880, or before, and plaintiff's agent notified him that it was on plaintiff's land, but he persisted in cutting and put into the water of the bay adjoining 1,423 logs and took them away with his tug.

Defendant introduced deeds and certificates of purchase from the Trustees of the Internal Improvement Fund of Florida, but these gave him no title or right of possession of the land because the United States had granted it to the predecessor of the plaintiff before the grant to the State.

While these logs remained upon the premises in possession of plaintiff they were in his possession, and this possession was sufficient to maintain his action of trover for their conversion. (Weymouth vs. Ch. & N. W. R. Co., 17 Wis., 550.) The conversion was complete when they were removed away from the boundary of the land, for while they remained upon the land they were still in his possession.

The offer of the defendant to prove the value of the standing trees as the measure of damages for the conversion was properly rejected, because the action was brought to recover the value of the logs taken away and not for the trespass in cutting them down. And the offer of the defendant to prove the value of logs at some other place to which he had removed them was properly rejected because plaintiff was entitled to the value at the time and place of conversion. The counsel of the respective parties agree that " the measure of damages is the value of the thing converted at the time of conversion."

Defendant's counsel cites the case of Weymouth vs. Chicago & N. W. Railway Co., deciding that where wood was piled on defendant's land for the purpose of selling it to defendant and was taken away by mistake by defendant before the sale was completed, the measure of damages was the value of the wood where plaintiff had deposited it and not at the place to which defendant had carried it and mingled it with other wood so that it its identity was lost. This was upon the ground stated that " where the owner waives the right to reclaim the property itself and sues for damages the difficulty of separating the enhanced value from the original value no longer exists. It is then entirely practicable to give the owner the entire value that was taken." The court held that in trover where the property was taken by mistake the rule of damages should be the value where first taken. The court cites approvingly the case of Curtis vs. Grant, 6 Johns., 168, where plaintiff had trespassed upon defendant's land and manufactured his timber into coal which remained upon the land. The trespasser sued the owner of the land for the coal, and it was held that he had no cause of action, for the coal belonged to the owner of the timber out of which it was made. " For it is conceded by all the cases that a wrong-doer can-

4

not, by bestowing labor upon the property of another, which he has tortiously taken, thereby divest the title of the original owner, but the latter may retake it in whatever form so long as its identity can be established. And in determining the question of recaption the law must allow the owner to retake the property, or it must hold that he has lost his right by the wrongful act of another. If retaken at all it must be taken as found, though enhanced in value by the trespasser. It cannot be restored to its original condition. The law, therefore, being obliged to say either that the wrong-doer shall lose his labor, or the owner lose the right to take his property wherever he may find it, very properly decides in favor of the latter."

This case comes far short of establishing the rule contended for that this defendant is liable only for the value of the standing trees, and that he ought not to be made to pay for the enhanced value consequent upon his labor in converting plaintiff's trees into timber upon plaintiff's premises. The difficulty is that a trespasser cannot by converting the trees of another into timber on the premises claim any property in the timber, because he is a trespasser and the property in the timber remains in the owner.

Defendant's counsel also cites Single vs. Schneider, 30 Wis., 57, (replevin) in which it is held that where logs are knowingly and wilfully cut by one man from the land of another, the value of the logs cut will be the ordinary measure of damages. In that case the defendant had manufactured the logs into boards and the court said that the plaintiff could not recover the value of the boards. This decision is in conflict with the uniform ruling of other courts which hold that the property has not changed ownership by the wrongful act of one who has taken possession of it without the consent of the owner. It was expressly condemned in Nesbit vs. St. Paul Lumber Co., 21 Minn., 491,

where the court says that the decision in Single vs. Schneider was "at variance not only with every adjudication on the point, but with principle; for the wrong-doer can be permitted to retain a part of the value, only on the ground that he has a property in the chattel, to the extent of that part of the value that he is allowed to retain." The rule is stated in Silsbury vs. Coon, 3 N. Y., 379: "If the wrong-doer sell the chattel to an honest purchaser having no notice of the fraud by which it was acquired, the purchaser obtains no title from the trespasser, because the trespasser has none to give. The owner of the material may still retake it in its improved state, or he may recover its improved value. The right to the improved value is a consequence of the continued ownership. It would be absurd to say that the original owner may retake the thing by an action of replevin, in its improved state, and that he may not, if put to his action of trespass or trover, recover its improved value in damages."

In Moody vs. Caulk, 14 Fla., 50, cited by appellant, it was held that the measure of damages in trover where the property converted was ordinary merchandise and the like perishable property the subject of traffic, the rule of damages was the value of the property at the time of conversion with interest, and not the highest price between the time of conversion and the trial with interest, as was charged to the jury at the Circuit. In other words, the rule we adopted gave the plaintiff compensation for his loss at the time of the conversion and interest, whether the conversion was fixed by the unlawful taking or by a refusal to deliver on demand made.

The same rule was enforced in Robinson vs. Hartridge, 13 Fla., 501, 515.

In neither case is there an intimation that the plaintiff is not entitled to any enhanced value produced by the con-

duct of the wrong-doer prior to the actual removal of the property from the owner's possession.

The claim made by the plaintiff here is for the value of the logs at the time of their removal from his premises, and that is the conversion complained of. It cannot be disputed that he had a right to the possession of the logs at least until they were taken away, and the authorities say he could reclaim the property even after their removal to any other place, because they were still his property. The argument of counsel for defendant is that the plaintiff ought not to profit by the labor of the defendant in making the property more valuable—in converting trees into timber—but the answer is that the defendant acted wrongfully, whereby he lost his labor, and though the timber is more valuable than standing trees, yet the timber belongs to the owner of the trees and not to the trespasser.

There are a few cases where courts have modified the rule of damages in trespass and trover and confined them to the actual damage sustained by the cutting of trees, but they are rather exceptions to the general rule, and are generally cases of innocent mistake or the suit is against an innocent purchaser after conversion, or where the article converted has been manufactured into other forms of merchandise. None of these cases apply to the facts before us.

The plaintiff here makes no claim for any value added to the logs after they were taken from his possession, but only for their value while lying in the water upon and adjoining his land. No exemplary damages were asked or awarded.

The charge of the court that the conversion was complete only when the logs were removed from plaintiff's land, and that the plaintiff was entitled to recover the value at the time and place of removal by the defendant, with interest, if the logs were shown to have been removed.

from the plaintiff's land by the defendant, is strictly in accord with the rule of law laid down by this court and by all other courts, as we understand them, with the exception mentioned of the few cases where courts modified the rule in favor of innocent purchasers after conversion and cases of innocent mistake.

It follows that the ruling of the Judge in excluding testimony as to the value of the standing trees and the expense of cutting and hauling to the water, and the value of the logs at the place to which they had been towed by defendant's boat after leaving plaintiff's possession, was not erroneous. This ruling is in precise accord with the argument of appellant's counsel that the value *at the* time of the actual conversion, and not the value at a subsequent time or at another place, is the true guide. The value of the logs when taken from the plaintiff's possession was the measure given to the jury, and we find no case where a rule more favorable to the defendant has been given upon facts similar to those in the present case.

The defendant claims that if he was a trespasser at all he was an innocent one; that he believed the property was his own, and there is no element of wilfulness or malice. But before he removed the logs he was notified by plaintiff's agent in possession that the land belonged to plaintiff. But he continued the cutting, and removed all the logs after this notice.

As to the evidence of title introduced by the defendant, it could not avail him because the Trustees of the Internal Improvement Fund or the State had no title, the land having been granted by Congress to a private party, under which title the plaintiff was in possession.

The plea that the plaintiff had no title to the logs, and that he was not entitled to possession, was not supported therefore by the deeds of the Trustees, or by any other evi-

dence in the case. Nor could the defendant defeat the right of recovery even if the plaintiff's title rested only in possession and the absolute title was in a third person, for according to the general tenor of authority in this country the defendant in trover cannot set up the title of a third person in defense, unless he, in some manner, connects himself with that title. Duncan vs. Spear, 11 Wend., 54; Weymouth vs. C. & N. W. R. Co., 17 Wis., 550; Barwick vs. Wood, 3 Jones, 306; Harker vs. Dement, 9 Gill, 7; Moore vs. Aldrich, 25 Tex., (Supp.) 276.

The judgment is affirmed.