GEORGE W. WRIGHT & CO., APPELLANTS, VS. E. H. SKINNER, APPELLEE.

TROVER—DAMAGES—INTERMINGLING OF GOODS.

1. In actions of trover for the wrongful conversion of property, where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property *at the time and place of its conversion* must govern the admeasurement of damage.

2. Where the property converted consists of logs taken from another's land, the *conversion* does not become complete until they are actually removed from the land of the owner ; they continue, in contemplation of law, to be in the possession of the owner of the land until actually removed therefrom.

3. Where the plaintiff in an action of trover, for timber cut and' carried away from his land, recovers damages, the rule for assessing them against the defendant is : (1) where he is a wilful trespasser, the full value of the property at the time and place of demand, or of suit brought, with no deduction for the defendant's labor and expense bestowed thereon; (2) where he is an unintentional or mistaken trespasser, or an innocent vendee from such mistaken trespasser, the value at the time and place of its first conversion ; (3) where he is a. purchaser without notice of wrong from a wilful trespasser,. the value at the time and place of such purchase.

4. Where the trespasser is an unintentional or innocently mistaken one, there should not be any deduction in his favor from the value of the property at the time and place of conversion for the cost of any value-enhancing labor bestowed thereon *anterior* to the time that the conversion becomes complete by actual removal from the owner's possession.

5. In order to justify a forfeiture of goods because of an intermingling thereof with the goods of another, two things must concur : (1) the party whose goods are claimed to be forfeited must have *fraudulently* and *wilfully* caused the confusion ; and, (2), the rights of the other party after the confusion must be *incapable otherwise of complete protection.*

6. A party having no possession of land, and who has no title thereto, cannot maintain trover for logs taken therefrom.

Appeal from the Circuit Court for Escambia. county.

The facts in the case are stated in the opinion of the court.

*John C. Avery*, for Appellants.

*John H. Carter* and *John Eagan*, for Appellee..

TAYLOR, J.:

The appellee sued the appellants in trover in the Circuit Court of Escambia county and recovered judgment for $1,915.82, from which appeal is taken. The declaration contains four counts as follows: 1st.

*Indebitatus assumpsit* for $15,000.00 for goods bargained and sold by the plaintiffs on July 1st, 1888, to the defendants. 2nd. That the defendants on the date aforesaid in the county of Escambia converted to their own use five million cypress shingles of the plaintiff's goods of the value of $15,000.00. 3rd. That on the date aforesaid, in the said county, the defendants converted to their own use 750,000 superficial feet of cypress planks, of the plaintiff's goods, of the value of $15,000.00. 4th. That on the date aforesaid, and in said county, the defendants converted to their own use 1000 cypress logs of the property of plaintiff, of the value of $15,000.00.

The defendants pleaded, to the first count, "never was indebted;" to the 2nd, 3rd and 4th counts, the general issue of "not guilty;" and a special denial that the said property was the property of the plaintiff; and a special denial that the plaintiff was entitled to the possession of said property. There was no proof to sustain the first, second, or third counts, all of it being confined to the conversion of cypress logs as charged in the fourth count. The evidence is quite voluminous, and it is unnecessary, from the questions presented by the assignments of error, to set it out or discuss it in detail. From the evidence it appears that about the 5th day of December, 1887, the plaintiff, by oral, telephonic, and letter correspondence, consummated a negotiation for the purchase of divers sections of swamp lands in Santa Rosa and Escambia counties, bordering upon the Escambia river and its tributaries, from the Pensacola and Atlantic Railroad Company, but which purpose was not perfected by a conveyance of the premises until the 11th day of January, 1888, when the Railroad Company executed its deed thereto

to the plaintiff. The plaintiff also exhibited in evidence a deed to himself from W. L. Wittich for divers other lands in the same territory dated June 28th, 1887, which deed describes all of the lands conveyed thereby as being situated in Santa Rosa county, among which is described "Fractional Section five Tp. 2 N. R. 30 W. containing 491.03 acres. The proof shows that from certain parcels of these lands divers persons, other than the defendants, cut and took away sundry cypress logs that were towed in rafts by water to a place called Ferry Pass, some distance from the lands from which they were taken, and were there, after being measured and inspected by timber gaugers and inspectors, sold to the defendants who paid for said logs the current market price there, according to the measurements made by the inspectors. Whether these trespassers were connected in any way or not with the defendants in the capacity of employes or agents in the commission of the trespass, the proof is very meager, indefinite and unsatisfactory.

The evidence is conflicting as to how many logs exactly came from the plaintiff's lands; indeed, the plaintiff's evidence as to how many logs he has lost from his lands is not at all as clear or definite as it might and should have been. It is shown that there were adjacent cypress-bearing lands, in which the plaintiff claims no interest, and from which came many of the logs purchased by the defendants at the same time that they purchased logs that came from the plaintiff's lands. According to the evidence all of these lands were overflown swamps, penetrable only with great difficulty, with no distinctly traced lines of division between the holdings of different owners. With the exception of 195 or 198 logs that were cut on Section 20, Tp. 2 N. R. 30 W., claimed by the plaintiff, that

the parties cutting them were forbidden by the plaintiff's agent from removing, there is no evidence that the trespasses upon the plaintiff's lands were wilful. The plaintiff's evidence does not show, as it could and should have done, how many trees were cut and converted into logs upon his lands, but he seems to have relied, for his recovery, upon showing that some logs, without definitely establishing their number, were taken from his lands, and purchased by the defendants in an intermingled condition in rafts with other logs that came from other lands that he had no interest in, claiming from such an intermingling that he is entitled to the whole. Whether the divers original parties who perpetrated the first conversion of the logs upon the plaintiff's lands were innocently mistaken or wilful trespassers or not, we think that the proof shows that the defendants were innocent purchasers of the logs at Ferry Pass, and they are not shown to have had any knowledge of or connection with the trespasses upon plaintiff's property; but, on the contrary, the uncontradicted proof upon their part shows that they required their different vendors of logs to declare under oath, before they would purchase, from what lands the logs came that they offered for sale, and bought only such as were thus shown to have been taken from their own lands. Under these circumstances the question is presented by the errors assigned and insisted upon, what was the plaintiff's measure of damages, his action being trover? In discussing this question, we will group the various exceptions taken at the trial that bear upon the subject of damages. 1st. The plaintiff was permitted, over the defendants' objection, to introduce evidence as to the value of cypress logs at Ferry Pass, and at Wright's mill at Pensacola. 2nd. The defendants proffered to prove at the trial what the

expense was of getting out cypress logs from the lands
in question and the expense of running them from the
swamps down the river to Ferry Pass, as a deduction
from the damages to be recovered by the plaintiff, but
the court refused to admit it. 3rd. The following
charges on the subject of damages were given by the
court: "If you believe a certain number of logs were
cut from this land, to which the paper title was made
to the plaintiff, then you will inquire what became of
them, and whether they ever passed from the posses-
sion of the parties who cut them or who removed them
from that land. If they were cut at the time this
paper title was made as I have told you, you will de-
termine who removed them, and did they come into
the possession of Geo. W. Wright & Co. or their
agent, and if so, where. If you believe that they went
into their possession, or that of their agent, and that
they were subsequently transported to their mill in
Pensacola, then you will inquire what was the market
price of such logs as were cut upon this land and that
came into their possession. You will inquire what
was the market price, at the same time, in Pensacola,
if there was a market price, and what the logs were
worth. Whatever it is, you are to determine from the
evidence." "As to measurement, if you believe that
cubic measurement was the measurement that governed
logs of this kind at his mill, you will find for the plaintiff
and assess his damages upon the basis of cubical meas-
urement. If you believe that it was board measure, then
board measure will govern you. You will determine
from the evidence which was the prevailing measure-
ment at the time and at the mill, and what was the
value of the logs as it may appear to you from the evi-
dence—what the logs were worth at his mill." "If
there was no market price prevailing at his mill, and

the logs were purchased by them or their agent at Ferry Pass, you will find the value of these logs at Ferry Pass according to the evidence before you what was the value of these logs by cubical measurement or board measure, as you may determine from the evidence was in common use at Ferry Pass." "If you find for the plaintiff, you will find the amount of his damage, and you will add to that interest from the time the logs were taken possession of by Wright & Co. or their agent, at either of these points, whichever point you find in favor of, and allow interest at the rate of eight *per cent.* from the time of the conversion, and that would be your verdict."

The following charge was requested by the defendants but refused by the court, and exception taken to such refusal : " If you find from the evidence that the logs were cut from the plaintiff's land without his authority, and went into the possession of defendants at Ferry Pass, and were converted by them to their own use, but that they acted honestly and in good faith and without knowledge that they belonged to the plaintiff, then the plaintiff would be entitled to recover in this action the value of such logs at Ferry Pass after deducting the expense of cutting them and delivering them to the defendants."

The precise questions presented by these rulings have not heretofore been passed upon by this court, though several cases involving different phases of the rule of damages in trover have heretofore been presented and passed upon. In Robinson vs. Hartridge, 13 Fla. 501, there was an innocently mistaken conversion of the cotton of another by the defendant, who shipped the cotton from Jacksonville, Fla., to New York, where it was sold by his agent, and in that case the court says : " It is necessary in this case to deter-

mine and to state the time and place of conversion, for the rule as to damages in trover, under the circumstances disclosed in this case, is the value at the time and place of conversion, with legal interest to the date of the verdict. It is thus seen that it is necessary to determine the legal effect of the act of shipping the cotton beyond the State under the circumstances disclosed in this case, for if that be a conversion, then the value must be the value at Jacksonville, and the time of the estimate and the date from which the interest must be calculated must be the date of the shipment."
The general rule is here laid down that in trover the damage to be awarded is the value of the converted goods at the time and place of conversion with legal interest from that time up to the verdict. In Moody vs. Caulk, 14 Fla., 50, it is not shown whether the conversion was wilful or not. The goods converted were a quantity of logs lying in a lake that belonged to plaintiff, and that were taken away in 1864 by the defendant. In that case the trial court charged the jury as follows: "Should you find for the plaintiff, you are allowed to value the logs at the highest valuation of logs from the time of conversion to the present time." "If you find for plaintiff under the trover count, you may fix the value of the logs at the highest price that they were from the time of conversion till this date, as shown by the evidence, and interest thereon." These instructions were held to be erroneous, and the same general rule was again announced that the damages must be estimated from the proven value of the converted goods at the time and place of conversion with interest. In the case of Skinner vs. Pinney, 19 Fla. 42, that appears to be a case where the defendant wilfully trespassed upon the plaintiff's land and cut down his trees and took away the timber

logs made therefrom against the protest of the plaintiff, the defendant offered, at the trial, to prove the value of the logs at some other place to which he had removed them ; the defendant also tried to prove the value of the standing trees as the measure of the plaintiff's damage, endeavoring thereby to obtain a deduction for the value of the labor expended in converting trees into logs and in hauling them out to the water to be rafted. This court said as to the ruling of the trial court in excluding that evidence: "The ruling of the judge in excluding testimony as to the value of the standing trees and the expense of cutting and hauling to the water, and the value of the logs at the place to which they had been towed by defendant's boat after leaving plaintiff's possession, was not erroneous. This ruling is in precise accord with the argument of appellant's counsel that the value at the time of the actual conversion, and not the value at a subsequent time or at another place, is the true guide. The value of the logs when taken from the plaintiff's possession was the measure given to the jury, and we find no case where a rule more favorable to the defendant has been given upon facts similar to those in the present case." Stress is laid in that case upon the fact that the defendant was notified, before removing the logs from the plaintiff's land, that the land belonged to the plaintiff, and that he persisted in cutting and removing the logs after such express notice. The last case quoted approaches nearer to the question presented in the case under consideration but differs from it, in that, in the present case the suit is brought against the vendees of the parties who committed the trespass and who consummated the conversion, and there is proof tending to establish innocence and ignorance upon their part as to the trespass.

There is proof also that tends, at least, to show that, even with the original parties who trespassed upon the plaintiff's land they may have done so in this instance through mistake as to the location of obscure land lines.

If the parties who committed the trespass did so unintentionally through mistake in the land lines what is the legal measure of damage to the owner who sues in trover for compensation for the loss of property that he has sustained, and in such case, if the defendant is an innocent vendee from an innocent trespasser, what, in his case, is the measure of the damage? These are questions that are presented in the present case; and, as before stated, have never heretofore been before this court. In Wooden-Ware Co. vs. United States, 106 U. S. 432, where certain ash timber was knowingly and wrongfully taken from government lands; and, by the wilful trespassers, taken some distance to a town and there sold to the defendant, who was not chargeable with any intentional wrong, misconduct or bad faith in the purchase; and wherein the defendant vendees insisted that the measure of damage was the value of the timber on the ground after it was felled, and not the value it commanded at the distant town to which it had been transported and where they bought it, the Supreme Court of the United States says: "The weight of authority in this country as well as in England favors the doctrine that where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property when first taken must govern; or if the conversion sued for was after value had been added to it by the work of the defendant, he should be credited with this addition." In the head-note to that case the rule is concisely stated as follows: "Where the

plaintiff, in an action for timber cut and carried away from his land, recovers damages, the rule for assessing them against the defendent is: 1. Where he is a wilful trespasser, the full value of the property at the time and place of demand, or of suit brought, with no deduction for his labor and expense. 2. Where he is an unintentional or mistaken trespasser, or an innocent vendee from such trespasser, the value at the time of conversion, less the amount which he and his vendor have added to its value. 3. Where he is a purchaser without notice of wrong from a wilful trespasser, the value at the time of such purchase." The rules thus announced for the government of actions of trover, we think, are correctly stated, except the *second* subdivision thereof, that, according to the former decisions of this court, sustained, too, by the weight of the authorities, should be modified as follows : Where the trespasser is an unintentional or mistaken one, the damages should be the value of the chattels *at the time and place of their conversion.* Where the property converted consists of logs taken from another's land, the *conversion* does not become complete until they are actually removed from the land of the owner, because they are considered in law to continue to be in the possession of the owner of the land until actually removed therefrom ; therefore, where the trespasser is an unintentional or innocently mistaken one, there should not be any deduction in his favor from the value of the property at the time and place of conversion for the cost of any labor bestowed thereon anterior to the time that he completely consummates the conversion by actual removal from the owner's land. The following cases also sustain the rule as stated in Wooden-Ware Company vs. United States, *supra,* with the modification thereof as announced by

us above: Forsyth vs. Wells, 41 Pa. St., 291; Heard vs. James, 49 Miss., 236; Newman vs. Kane, 9 Nev., 234; Herdic vs. Young, 53 Pa. St., 176; Potter vs. Mardre, 74 N. C., 36; Maye vs. Yappen, 23 Cal., 306; Goller vs. Fett, 30 Cal., 481; Wetherbee vs. Green, 22 Mich., 311; Stockbridge Iron Company vs. Cone Iron Works, 102 Mass., 80: Foote vs. Merrill, 54 N. H., 490; Moody vs. Whitney, 38 Maine, 174; Tilden vs. John-son, 52 Vt. 628; 3 Sutherland on Damages, page 488 *et seq.*, and citations; 1 Sutherland on Damages, page 167 *et seq.*, and citations. From this statement of the law it is clear that the court below erred in admitting evidence as to the value of cypress logs at Wright's mill or at Pensacola, but did not err in rejecting the evidence offered by the defendant as to the cost of con-verting the trees into logs, and the cost of getting them out from off the land of the plaintiff. If the trespass-ers were unintentional or innocently mistaken ones, and the defendant vendees were also innocent and without notice of any wrong, then the defendants should have been allowed a deduction for the fair cost of all labor necessarily bestowed upon the property *after the conversion became complete* by removal from the plaintiff's land or possession, or for all labor be-stowed thereon after that time and up to the time of its purchase by the defendant vendees that enhanced its value. If the defendants are innocent vendees, without notice, of a wilful trespasser, then the measure of damage against him would be the value of the logs at the time and place of his purchase thereof from such wilful trespasser. The quoted charges of the court to the jury on the question of damages were also erroneous. The court should have instructed the jury as to the different phases of the rule for the admeas-urement of damages, that are dependent, as above

shown, upon the presence or absence of wilful intent in the conversion.) The proof shows that some of the logs came from a part of section 5 in Tp. 2 N. R. 30 W. that lies in Escambia county, the residue and major part of that section being situated across the Escambia river in Santa Rosa county, said river being the dividing line between said two counties, and flows across said section 5 in such shape as to throw a small portion thereof in Escambia county. To prove his title to the logs that came from this Escambia county part of said section 5, the plaintiff introduced in evidence two deeds, the first being a deed from a special Master in Chancery to W. L. Wittich, made in pursuance of a decree of foreclosure of mortgage rendered in the Circuit Court of Santa Rosa county, which included said section 5, but it is described therein as being situated in Santa Rosa county; the second being a deed from W. L. Wittich to the plaintiff conveying divers lands, all of which are therein described as being situated in Santa Rosa county and that includes said section 5, but describes it as being "Fractional section 5." In reference to this section W. L. Wittich testified at the trial that he owned all of section 5, but that he did not know that any part of it lay in Escambia county. That he supposed and understood that the whole of the section lay in Santa Rosa county, and he therefore never took possession of or cut any timber from any part of it except what was located in Santa Rose county. The deed to Wittich from the special Master in Chancery recites that the decree of foreclosure, under which the sale was made, was rendered in the Circuit Court of Santa Rosa county ; and it recites further that the lands conveyed thereby were sold at public outcry after due publication of notice in the

town of Milton, the county site of Santa Rosa county. At the trial the defendant moved the court to exclude these two deeds from evidence so far as they purported to convey that part of said section 5 that was shown to be situated in Escambia county; and also moved the court to exclude all testimony in reference to the conversion of logs from said part of said section, which motions the court refused to grant, and this ruling is assigned as error. The court also excluded two deeds offered by the defendants in evidence relative to said part of section 5 in Escambia county; the first being a tax deed from the Clerk of the Circuit Court of Escambia county to one Louis Boley dated May 18th, 1887, that appears to be regular upon its face, and that recites that it was made in pursuance of a sale of said land for taxes made by the collector of revenue for Escambia county on May 4th, 1886, for the non-payment of taxes assessed thereon for the year 1885; the second being a deed from said Boley and wife conveying said part of said section 5 to the defendants, dated April 14th, 1888; and this ruling also is assigned as error. We think the court erred in all of these rulings. The deeds from the special Master in Chancery to Wittich, and from Wittich to the plaintiff should have been excluded, in so far as they were relied upon to show title in the plaintiff to that part of section 5 situated in Escambia county. And the evidence for the plaintiff in reference to logs taken from that part of said section should have been excluded also. Neither of the two deeds introduced by the plaintiff purported to convey any land in Escambia county, but on the contrary expressly located all the lands they conveyed in Santa Rosa county. Besides this it is not shown that the decree of foreclosure under which the special master sold said section five, or a certified copy

thereof, was ever recorded in Escambia county so as to create a lien upon and to become binding upon that part of said section that lies in said county, agreeably to the provisions of section 2, page 619, McClellan's Digest (Section 1174 R. S.) Neither is it shown that the mortgage under which said foreclosure sale was had, was ever recorded in Escambia county so as to effect creditors and subsequent purchasers with notice of its existence as provided by section 6, page 215, McClellan's Digest (Sec. 1972 R. S.), or to become a lien on the land then. Besides all this, although the decree of foreclosure under which the special master sold these lands is not before us in the record, it is clearly inferrable from the recitals in the master's deed that said decree did not undertake to authorize him to sell any lands lying outside of Santa Rosa county. We do not think, therefore, that the deeds admitted on behalf of the plaintiff were sufficient to prove title in him to that part of said section 5 that lies in Escambia county; and, his whole reliance, as to ownership of the logs that came from this parcel of land, being placed upon these two deeds, we think the evidence in reference to those logs should have been likewise excluded. The excluded tax title to Boley and the deed from Boley to the defendants we think, too, should have been admitted in evidence. It follows from what has been said that the charge of the court, to the effect: "that the two deeds offered by plaintiffs were sufficient to convey to him a fee simple title to that part of section 5 that lay in Escambia county," was also erroneous.

The court also gave the following instruction to the jury, that is assigned as error: "In determining where these logs came from, if you believe from the evidence, not beyond a reasonable doubt, but upon a preponder-

ance of the evidence, that any of these logs came from other lands than the lands of the plaintiff as have been described you will ascertain, if you can from the evidence, how many. If you are unable to determine how many, but that some came from the plaintiff's lands and some from other lands,—if you are unable to do so, you will determine from the evidence, and a preponderance of the evidence, how many came from other lands. If you are unable to do that, and you believe these logs were cut by parties in the employ of the defendants, and by them commingled with logs cut by the plaintiff's men on lands that the plaintiff directed parties to cut on,—if you are unable to determine how many, then you will not make any allowance on that ground." This instruction is erroneous and should not have been given, if for no other reason, because it is vague, indefinite and confusing. It is not justified by the facts, as there is no proof of any commingling of logs cut by persons in the defendant's employ with logs cut by persons in plaintiff's employ. It is further erroneous because it sanctions a recovery by the plaintiff, because of a commingling of logs, whether the commingled logs came from lands owned by the plaintiff or not. It is erroneous also in its statement as to the rule involving a forfeiture of one's goods by an intermingling thereof with the goods of another, in that it fails to state that before any such forfeiture can result from such intermingling it must have been *wilfully* done. In reference to the forfeiture of goods by fraudulent intermingling with the goods of another, the following seems to be the prevailing modern rule: "One who has confused his own property with that of another shall lose it when there is a concurrence of these two things: first, that he has fraudulently caused the confusion; and secondly, that

the rights of the other party after the confusion are not capable otherwise of complete protection.'' 1 Southerland on Damages, pages 163 and 164 and authorities cited. We do not think the proofs submitted in this case will justify the application of the doctrine of forfeiture by an intermingling of goods. There is no evidence that even tends to prove any wilful or fraudulent intermingling; and, besides this, the plaintiff alleges in his declaration the loss and conversion of a given number of logs, it devolves upon him to make out his case by proof and thereby to show with certainty the extent of his loss. If he has lost, and the defendant has converted, 1000 of his logs, as he alleges, it is for him to establish it by proof; and, after he has made out by his proofs the number that have been converted, though he may not be able to point out the identical logs that belong to him out of a general mass of similar logs in the defendant's possession, yet it would certainly be feasible to completely protect his rights by giving him, out of the general mass into which his logs has been thrown, the equivalent, in kind or in value, of the number and character that he had proven were lost by him and converted by the defendant. A plaintiff in trover will not be permitted to allege in his pleadings the loss and conversion of a definitely given number of chattels, and then recover for a large quantity thereof, not shown by his proofs to have been either lost or converted, upon proof simply of the loss and conversion of an indefinite few and that those few have been so intermingled with a large mass of similar chattels in the defendant's possession that he can not identify his own. The doctrine of forfeiture of goods by fraudulent admixture can not thus be invoked to supply the place of proof that

it is the plaintiff's duty to bring forward. Moody vs. Whitney, 38 Me., 174.

At the trial evidence was permitted to be introduced on behalf of the plaintiff relative to the conversion by defendants of logs from certain sections of the land conveyed by the P. & A. Railroad Company to the plaintiff anterior to January 11th, 1888, the date when said lands were conveyed. The plaintiff proved by E. F. Skinner that he negotiated with the representative of the railroad company for the purchase of these lands for the plaintiff; that he accepted the railroad company's offer of sale and accepted the land on the 5th of December, 1887, but that the representative of the railroad did not finally agree to the sale until December 19, 1887, but he testifies also that "we," (meaning himself and the plaintiff), "had no possession of the land before we obtained the deed." In Skinner vs. Pinnep, 19 Fla., 42, it is held that proof of possession of land by the plaintiff is sufficient to enable him to maintain trover for logs taken therefrom. From the proof it appears that the plaintiff did not have either the possession of, or a deed to these lands prior to Jany. 11th, 1888, he could not, therefore, maintain trover for logs taken therefrom prior to that date, and it was error to permit such proof. This disposes of the errors assigned and insisted upon.

The judgment of the court below is reversed and a new trial awarded.