WILSON CYPRESS COMPANY, *et al.,* v. FRANK H. LOGAN.

162 So. 489.
Division B.
Opinion Filed June 19, 1935.

*J. V. Walton,* for Plaintiff in Error;

*Frank R. Greene,* for Defendant in Error.

ELLIS, P. J.—Frank H. Logan sued Wilson Cypress Company and C. W. Newman in an action for the wrongful conversion of cypress logs cut and removed from the plaintiff's land in Lake County, Florida. It was alleged that the value of the property was fifteen hundred dollars. The declaration was filed in October, 1931.

In June, 1932, the court by order allowed the plaintiff to amend his praecipe for summons and declaration by alleging the sum of $3,500.00 as the value of the logs on the basis of $25.00 per thousand feet board measure instead of $10.00 per thousand feet. Pleas of not guilty were separately interposed by Wilson Cypress Company and C. W. Newman.

There was a verdict for the plaintiff against the defendants jointly in the sum of $1,844.52, and judgment was entered for that sum against the defendants, to which they took a writ of error.

The declaration is in the statutory form for wrongful conversion of goods. See Section 4314, par. 26, C. G. L. 1927.

It is not alleged that the defendants are partners, but they were charged upon a joint liability for the wrongful conversion to their own use of the plaintiffs' cypress logs, or the wrongful deprivation of the plaintiff of the use and possession of them.

In the case of Marx Bros. v. Culpepper & Dupont, 40 Fla. 322, 24 South. Rep. 59, in an opinion by Mr. Justice MABRY the principle was announced that when a joint liability is alleged against two or more defendants it may be sustained by proof of such liability without reference to a partnership relation, or by showing such relation without alleging it in the declaration. That action was one in assumpsit for goods sold and delivered by plaintiff to defendants.

In the case of Peacock v. Feaster, 51 Fla. 269, 40 South. Rep. 74, which was an action of trover, the court, speaking through Mr. Chief Justice SHACKLEFORD, applied the same principle, saying, " 'Where there is more than one defendant in an action of trover, one or more defendants may be acquitted and a verdict and judgment taken against the others, the verdict and judgment being shaped so as to hold liable those only who are shown by the evidence to have been guilty of conversion.' 21 Ency. Pl. & Pr. 1124; Dicey's Parties to Actions, Rule 98, marginal page 431. It would seem clear that under the plea of not guilty interposed by the defendants on the 6th day of February, 1905, either defendant could have introduced any competent evidence at the trial tending to show his non-liability, and that the other pleas filed by them were unnecessary, even if in proper form."

In each case the defendants were alleged to be partners, but the relation affected only the probative force of the evidence introduced to establish the joint liability. In the case of assumpsit the relation established the joint liability while in the action of trover either defendant might by evidence show his non-liability notwithstanding the relation.

The essential elements of a conversion is a wrongful deprivation of property to the owner. See West Yellow Pine Co. v. Stephens, 80 Fla. 298, 86 South. Rep. 241. In that case the court quoted as follows: "Where there is a taking of chattels with intent to exercise over them an ownership inconsistent with the real owner's right of possession, there is a conversion"; that "conversion takes place when the trespasser, at the place where it lay when the tree is cut or elsewhere, assumes dominion over the timber that is inconsistent with the rights of the true owner. * * * This view is not inconsistent with the decision on the facts in the cases of Moody v. Caulk, 14 Fla. 50; Skinner v. Pinney, 19 Fla. 42; Wright v. Skinner, 34 Fla. 453, 16 South. 335. Peacock v. Feaster, 51 Fla. 269, 40 South. 74; Robinson v. Hartridge, 13 Fla. 501."

The action brought in this case is the remedy provided by statute to recover the value of personal property converted by the defendants to their own use. It is an action against the defendants jointly but not as partners. To hold them jointly each must be shown to have been guilty of a conversion either by agreement among them or each acting separately in such manner as to show that the act of each was the exercise or the assumption of dominion over the property unauthorized by the rightful owner.

A taking with intent to exercise an ownership inconsistent with the owner's right of possession is a conversion.

See Quitman Naval Stores Co. v. Conway, 63 Fla. 253, 58 South. Rep. 840; West Yellow Pine Co. v. Stephens, *supra*.

The element of trespass is not involved in this case. The going upon the land and cutting the timber is not an element in this proceeding. Quitman Naval Stores Co. v. Conway, *supra*.

As said in the last cited case, the trespass, the going upon the land and cutting the timber, is disregarded in this action. It is the appropriation of the cut timber, the assumption of dominion over it which is inconsistent with the rights of the true owner. Each defendant must be shown to have exercised in co-operation with the other, or independently, such unauthorized dominion over the property.

The point is clearly elucidated by Mr. Justice WESCOTT speaking for the court in Robinson v. Hartridge, *supra*. The facts in the case were in substance as follows: Hartridge bought twelve bales of cotton from Griffin of Lake City. Eight of the bales were shipped and Hartridge sold them in New York through his factor at a satisfactory price. Griffin said that he shipped the remaining four bales to Hartridge, but the latter never received them. Robinson of Jacksonville was also receiving consignments of cotton. Among other bales of cotton he received four bales which he could not account for, having no advices concerning them. Through some inadvertence or carelessness on the part of his employees those four bales were included in a shipment of cotton by Robinson to New York and sold for his account afterwards.

It was discovered that the four bales of cotton belonged to Hartridge, and Robinson agreed to pay Hartridge for them when the account sales was received. When the account sales was received Hartridge was dissatisfied with the price and brought his action against Robinson in trover for

the conversion, although Robinson had paid Hartridge $100.00 on account. Hartridge obtained a verdict and Robinson took an appeal under the practice then existing.

The judgment was reversed, Mr. Justice WESCOTT speaking as follows upon the point:

"Neither a naked possession nor every asportation accompanied with a recognition of the title of the true owner, and which is not to interfere with the dominion of the true owner over the chattel, constitutes a conversion; but 'any asportation of a chattel for the use of the defendant or a third person amounts to a conversion, for the simple reason that it is an act inconsistent with the general right of dominion which the owner of a chattel has in it, who is entitled to the use of it at all times and in all places.' 8 Meeson & Welsby, 547. In this case the sending of the cotton to the vessel and authorizing its being placed in the hold, was made with the impression that it was a consignment. Before the vessel sailed the defendant, receiving no advices as to it, made efforts to get the cotton out of the vessel, but the hatches were down and the ship was about ready to sail. The agent of the defendant, however, states in his testimony that he did not make much of an effort to get the cotton, as he believed it belonged to defendant.

"That the defendant was doing a business in which it was his duty to ship cotton to New York for other parties, and that this cotton was shipped under the impression and belief that the action of shipment beyond the State and to a distant market was simply doing what the defendant thought would be the desire of the owner, cannot justify the act of shipping the cotton on his own account. The sale in this case was an assumption of general ownership and property; the shipment was the assumption of a particular power to place it in 'possession of the carrier for

removal to a distant market, and though the bill of lading was taken in the name of a third party, it was in fact for the benefit and account of the defendant, and it was a shipment on his own account. It is not enough that such acts as those are done under the *belief* that the party doing them is the agent and factor of the true owner, and is invested with the special power and authority incident to such relations, and that it was the purpose of the party to retain the proceeds of sale for the benefit of the true owner when discovered. Such act must be *authorized* by the owner, and if it is not, it is a conversion. It is an assumption of authority and power inconsistent with the right of the owner. The owner had a right to retain his cotton at Jacksonville, to ship it to Liverpool, or to make any other disposition of it that he saw proper. Directing its shipment, its actual shipment upon his own account, beyond the State, destined for a particular market for sale, is an assumption of dominion over it, and being *unauthorized* by the rightful owner, constitute a conversion."

"It was urged in this case that the verdict was contrary to the evidence and law, the defendant insisting that even if acts inconsistent with the right of the owner were proved, that it was apparent from the evidence that the acts of ownership exercised by the defendant over this property, viz.: the shipment to New York and sale, were approved by the plaintiff, that the plaintiff did not object to the shipment when advised of it, nor did he object to the *act of sale,* but that on the contrary, after being advised by defendant that he had shipped four bales of cotton that he had no advices of, which was perhaps his (the plaintiff's) and that it was perhaps sold, it was agreed between the parties that defendant would pay for it when he got the account sales, that when the account sales was received, plaintiff declined

to accept payment according to the account sales, on account of the small price for which it sold, and that defendant on account of the small price, concluded that the cotton he shipped could not have belonged to plaintiff. We deem it necessary to notice this, as it involves interesting questions as to the form of action in the several aspects in which the facts may be viewed, which facts we leave to the jury.

"If the plaintiff in this case assented to, affirmed, agreed to, or ratified the *act of sale* before the account sales was received, and his objections arose from the *results of the sale,* to-wit: the smallness of price received, then there is no conversion, and trover is not the appropriate form of action. 16 John., 74; 27 Ala. 229; 12 John., 300. If the act of sale was ratified or assented to, then if there was no breach of duty or fraud in the manner in which the act of sale was performed, the form of action is assumpsit. If there was a breach of duty or fraud in the act of sale, the remedy for the damage consequent upon the breach of duty, is a special action on the case. 3 Taunt., 11; 12 John., 300; 13. Ind., 41; 16 John., 76; 12 Pick., 139. As to what is the true state of facts, we must leave for the jury to determine under proper instructions, and as there is to be a new trial upon other grounds, the parties will have full opportunity of showing the true state of the case." (Emphasis ours.)

The facts in this case briefly stated so far as the same are disclosed by the record are as follows: Newman is an independent logger operating upon his own account. Wilson Cypress Company operates a saw mill at Palatka and had often purchased logs from Newman, who rafted them down the river to the boom of the Wilson Cypress Company, where the logs were scaled and paid for. This course of dealing had been caried on for some time and Newman

had an account with the Company upon which at times he would receive advances against the next raft of logs to be brought by him to the boom.

In July, 1931, Newman brought one raft of logs to the Company's boom. Part of the timber in the raft was cut from the plaintiff's land. Newman cut the timber in the belief that he had a right to do so. However, that is not important except that it may show that the Company likewise was innocent of any purpose to deprive the owner of his property. In August Logan advised the Company that Newman had cut part of the logs contained in the raft from Logan's land and removed them without his authority, and that it was Logan's purpose to hold the Company responsible for the timber cut from Logan's land. The Company was also advised that Newman had cut other timber from the plaintiff's land on "Blue Creek Island" and had made up a raft of such timber the day before, which he was taking to the Company's boom.

Logan then went with his attorney to the office of the Company at Palatka and an agreement followed under which the Company would purchase the second raft from Newman when brought to the boom and hold the proceeds to await a settlement between Newman and Logan as to the timber which in both rafts had been removed from Logan's land. Later when the second raft, part of which containing logs which had been removed from Logan's land, was brought to the boom of the Cypress Lumber Company, the logs were scaled, the price agreed on and the money due therefor was held by the Company pursuant to the agreement.

Later and before an adjustment of the controversy between Newman and Logan as to what part of both rafts consisted of timber removed from Logan's land had been

made between them, the Company, through mistake arising from a misunderstanding between some officer of the Company and an attorney whom the Company official thought was Logan's attorney, the money due for the second raft was released and paid to Newman by the Company.

In these circumstances which we think the evidence reasonably established Logan brought this action for conversion against both the Company and Newman.

In the court's instructions to the jury the points of law discussed in this opinion concerning the nature of an action of this character was not explained and requested instructions, particularly those numbered 2, 5, 9 and 10 as asked for by the defendant which did correctly announce the rule of law applicable were refused.

As indicated by Mr. Justice WESCOTT in the case of Robinson v. Hartridge, *supra,* if the act of the sale of the second raft by Newman and the purchase of it by the Company under the terms of the agreement were assented to by Logan the form of his action should be assumpsit. If there was a breach of duty by the Company in paying the money for the second raft over to Newman the action should have been a special one on the case. In any event the question of what was the true state of facts should have been left to the jury under appropriate instructions.

However conflicting the evidence may be there was evidence in behalf of the Company to show, first, that the Company did not participate in nor was in anywise concerned with the alleged conversion of the timber by Newman in removing it from the land; second, if the Company purchased the logs in the rafts and appropriated them to its own use such act was a separate conversion by it having no relation to the original act of conversion by Newman insofar as such alleged conversion was the joint act of both

defendants; third, that the Company's purchase of the second raft was authorized by Logan and such act therefore did not amount to a conversion of those logs by the Company; fourth, the agreement between Logan and the Company under which the Company acted in purchasing the second raft and held the proceeds of the sale subject to the adjustment between Logan and Newman as to the former's demand for the value of the logs in both rafts was a ratification by Logan of the purchase of the first raft and an authorization by him of the purchase of the second. These matters should have been submitted by the court to the jury under proper instructions which were prepared by the defendant's counsel and submitted to the court.

His refusal to give them was error for which the judgment should be reversed.

Judgment reversed.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.