164 So.2d 246 (1964)
S.S. JACOBS COMPANY, a corporation, Appellant,
v.
W.B. WEYRICK, Appellee.
No. E-250.
District Court of Appeal of Florida. First District.
May 14, 1964.
Rehearing Denied June 9, 1964.
*247 Reinstine, Reinstine & Panken, Jacksonville, for appellant.
Robinson & Randle, Jacksonville, for appellee.
RAWLS, Judge.
In an action for conversion defendant S.S. Jacobs Company has appealed from an adverse final judgment entered by the Circuit Court for Duval County based upon a jury verdict.
The question submitted for our determination is whether the trial court erred in denying defendant's motions for a directed verdict on the grounds: 1. that there was insufficient evidence of defendant's conversion of plaintiff Weyrick's property to submit the question to the jury, and 2. that the plaintiff failed to show the market value of the wallpaper at the time of the alleged conversion. The determination of the first point is dependent upon a construction of the description contained in the lease of the premises herein concerned.
The uncontroverted facts established by the evidence and pertinent to the consideration of the above question, are as follows:
On March 6, 1952 Weyrick, as lessee, entered into a written lease with one Bertie H. Buck, owner, for the premises described *248 as: "That certain storeroom known as eleven (11) West Church Street". Weyrick went into possession of the premises including a small shed, located about twelve feet to the rear of the main building, and utilized the shed as a storage room for equipment and stock used in connection with his retail wallpaper business. This shed was connected to the main building by a common brick wall on the west as evidenced by a diagram exhibited by the defendant to the jury.

-------------------------------------------------------------------------
 West Church Street
 -------------- --------------------------------
| | | | ||
| | R.R. Bar | | 11 W. Church St. ||
| | | | Store ||
| |--------------| | Building ||
| | | | ||
| | Athen's | | ||
| | Restaurant | | ||
| | | | ||
| Main |--------------| | ||
| Street | | Alley | ||
| | Dry Cleaners | | ||
| | | | ||
| |--------------| | ||
| | | | Rear Door ||
| | | | ||
| | | |------------------------||
| | | | ||
| | | | Alley ||
| | | | ||
| | | | -----------||
| | | | | ||
| | | | | Shed ||
| | | | | ||
| | | | ===========||
| | | | ||
| | | | ||

On November 14, 1955, during the tenure of Weyrick's second lease, Buckman, Ulmer & Mitchell, as agent for owner Buck, advised Weyrick by letter to vacate the shed stating that same was under lease to Athen's Restaurant. When asked what was his response to that letter, Weyrick testified: "I said if they wanted possession of it, they could take it through due process of law."
On February 20, 1957 the parties entered into an extension of the lease for an additional two year term. On December 19, 1958, the parties entered into a three year lease which continued to describe the premises by the address. Weyrick was at all times since 1952 in possession of the shed.
On August 15, 1960 owner Buck leased the entire block on which the premises in question were situated to The Selwyn Corporation for a period of 99 years. This lease recited that it was "subject to" certain named leases including the one between Buck and Weyrick and that the "* * * Lessee (Selwyn) has examined and is familiar with the terms and stipulations of each of said leases and tenancies * * *" This 99 year lease to Selwyn Corporation constitutes the genesis of the present controversy.
*249 On February 8, 1961 Robert H. Jacobs[1] sent men to tear down the shed. Mrs. Weyrick, in an ensuing telephone conversation, requested Jacobs to consult with her attorney and he informed her that he was going to tear the shed down and she must vacate. On February 9, 1961 Jacobs, by letter, informed Weyrick: "* * * Your attorney has advised me that you have certain material stored in the warehouse located on my property to the rear of the storeroom which you lease from me on Church Street. This is to put you on notice that you are to remove this material by Monday, February 13, 1961. Otherwise, I will have this material removed." [Emphasis supplied.]
On February 14, 1961, eight or ten men acting under orders from Jacobs removed the merchandise and razed the shed. Plaintiff's property was then stored in a warehouse belonging to S.S. Jacobs Company and a warehouse receipt was sent to Weyrick. Later the merchandise was disposed of in some way by Jacobs's employees.
The amended complaint alleged plaintiff's storage of goods in, and his possession and maintenance of, the shed used in connection with the retail wallpaper business he owned and operated at 11 West Church Street, Jacksonville, Florida. It alleged defendant's willful, malicious, wanton and forcible entry into said storage room and its removal and conversion to its own use the goods and chattels stored there. Defendant's answer admitted the storage of goods and the removal of same by defendant, denied the forcible entry and conversion and affirmatively alleged: "* * * that the said storeroom to the rear of the business store, located at 11 West Church Street, was owned and possessed by Defendant and was not part of the premises leased to the Plaintiff * * *" The parties stipulated: "The defendant did, on February 14, 1961, enter the building referred to in the complaint and removed therefrom the contents thereof."
Consequently, the crucial question posed by the pleadings and the factual disputes presented to the jury for its determination concern the interpretation and intention of the parties as to the extent of the leased premises demised to Weyrick under the description of "that certain storeroom located at 11 West Church Street."
The general rule is that a description of the leased premises by a street number includes as much of the lot upon which the building is situated as is necessary for the purpose for which it was let. Even the lease of a particular part of a building ordinarily gives the lessee no rights outside such part, except such as were intended to be included as appurtenant to the beneficial enjoyment thereof, or such as it was manifest had been designed and appropriated for the benefit of the leased premises. Everything which belongs to, or is used with, and appurtenant to, the demised premises and which is reasonably essential to the enjoyment of the leased premises passes as an incident thereto, unless specially reserved. The ultimate question depends upon the intent of the parties as interpreted in the light of surrounding circumstances.[2]
The evidence adduced at the trial disclosed that Weyrick considered the shed as part of the premises he leased; that he refloored, repaired, padlocked and appropriated and used the same in connection with the purpose for which the premises were leased; that in 1955 the rental agents of the owner Buck knew Weyrick had possession, but on two occasions thereafter again leased the premises to him without inserting a more limited or specific description than that previously used; and that defendant, in addition to using the same rental collecting agent Buck had used, had actual knowledge of Weyrick's claim.
*250 The question being one of fact as to the intent of the parties, it was correctly submitted, under proper instructions, to the jury which concluded that the shed was part of the leased premises. Such conclusion was based upon substantial competent evidence and was sufficient to sustain allegations set out in the complaint of a wrongful conversion on the part of defendant.
Florida has long recognized that "* * * conversion takes place when the trespasser * * * assumes dominion over * * * [the property] that is inconsistent with the rights of the true owner".[3] "* * [T]he essential elements of a conversion is a wrongful deprivation of property to the owner * * *"[4] "* * * [B]efore a party may be held guilty of such conversion, it must be shown that there was exercised a positive, overt act or acts of dominion or authority over the money or property inconsistent with and adverse to the rights of the true owner".[5] When these principles of law are applied to the facts submitted to the jury, we conclude that the instant conversion occurred when Jacobs wrongfully took plaintiff's property from plaintiff's leased premises and by such taking exercised dominion over the property inconsistent with the rights of the true owner.
As to the remaining question urged by appellant with reference to the sufficiency of the proof of damages, an examination of the record discloses that adequate proofs were submitted to the jury from which its determination was made. We find this point to be without merit.
Affirmed.
CARROLL, DONALD K., Acting C.J., dissents.
WIGGINTON, J., concurs.
CARROLL, DONALD K., Judge (dissenting).
I find myself unable to agree with the majority's conclusion and analysis of the legal problem presented in this appeal. Stated succinctly, my position is this: The appellee-plaintiff elected to file this action at law against the defendant for the conversion of the wallpaper which he had stored in the shed standing behind the storeroom he had leased from the defendant's predecessor-in-title. Since he elected to sue for conversion, he must prove the elements of that cause of action in order to recover damages in such a case. The "essential element" of conversion is "a wrongful deprivation of property to the owner * * *" as the Supreme Court of Florida held in West Yellow Pine Co. v. Stephens, 80 Fla. 298, 86 So. 241 (1920), Star Fruit Co. v. Eagle Lake Growers, Inc., 160 Fla. 130, 33 So.2d 858 (1948), and in other cases.
Inevitably, then, the plaintiff in such an action for conversion has the burden of proving by a preponderance of the evidence that the defendant was guilty of such a "wrongful deprivation" of his property, the wallpaper. I have been unable to find in the record sufficient evidence from which the jury could lawfully find that the defendant committed such a wrongful deprivation.
In addition, I have difficulty in ascertaining the theory under which the plaintiff claims a wrongful deprivation by the defendant. There is no question that the defendant owns the storeroom leased by the plaintiff as well as the shed. The property covered by the plaintiff's lease is specifically described therein as "that certain storeroom known as eleven (11) West Church Street." No one questions that "that certain storeroom" described in the *251 lease is on the ground floor of the building fronting on West Church Street.
Then under what theory does the plaintiff claim a right to store his wallpaper in the shed? He is estopped to claim title to the shed, for the rule is firmly established in Florida that, where the relation of landlord and tenant is shown, the tenant is estopped to deny his landlord's title. See, among many other cases, Winn v. Strickland, 34 Fla. 610, 16 So. 606 (1894), Rogers v. Martin, 87 Fla. 204, 99 So. 551 (1924), Gray v. Callahan, 143 Fla. 673, 197 So. 396 (1940), and Ballard v. Gilbert, 55 So.2d 723 (Fla. 1951).
In the last-cited cases the Supreme Court of Florida, in an opinion written by the late Justice Terrell, said:
"* * * Since feudal times it has been the rule that the relation of landlord and tenant is not a mere technical one, but implies a relation of trust and confidence that should not be abused. The tenant being in possession, must act in good faith. He should not be permitted to set up a title of his own or that of another so long as his contract exists.
"This court is committed to the doctrine that after the expiration of his lease a tenant may disclaim the title of his landlord and force him to an action for recovery within the period of the statute of limitations, but before any foundation can be laid for the operation of the statute, a clear, positive and continued disclaimer and disavowal of the landlord's title and the assertion of an adverse right must be brought home to the landlord by positive and distinct notice."
My view of the legal situation presented in the record before us is well expressed in the opinion of the Supreme Court of Oregon in Lee Tung v. Burkhart, 59 Or. 194, 116 P. 1066 (1911), involving somewhat comparable facts. In that case the defendant, the owner of a building, having been ordered by the municipal authorities to remove the building because it was unsafe, requested her tenants to remove their goods. Upon the tenant's refusal to do so, the defendant took possession of the goods, transferred them to a warehouse, and delivered a warehouse receipt therefor to the tenants' attorney. The Supreme Court held that the defendant was not liable for a conversion of the goods, saying:
"In the case under consideration, the findings of fact do not show that defendant wrongfully took the property of plaintiffs, asserted any title or claim thereto, or in any way attempted to claim or obtain any benefit therefrom, either for herself or for any one else."
The Oregon court also quoted with approval the following from Sparks v. Purdy, 11 Mo. 219:
"The bare removing of one's chattel from one spot to another, without denying his ownership, but, on the contrary, acknowledging it, cannot be conversion."
In the instant case the defendant at no time denied the plaintiff's ownership of the wallpaper but rather acknowledged such ownership, specifically acknowledging it by delivering to the plaintiff the warehouse receipt entitling the latter to regain possession of the wallpaper at any reasonable time.
It is no answer to say that the question of wrongful deprivation was submitted to and determined by the jury at the trial, for no rule is more firmly settled than that a jury must base their findings upon the evidence adduced at the trial under the issues drawn by the parties' pleadings. My position is that there was no competent, substantial evidence at the trial from which the jury could lawfully find that the defendant was guilty of wrongful deprivation  the essential element of the cause of action which the plaintiff elected to sue upon. I would, therefore, reverse the judgment appealed from.
NOTES
[1] The defendant S.S. Jacobs Company and The Selwyn Corporation are operated by Robert H. Jacobs.
[2] 51 C.J.S. Landlord and Tenant, §§ 290, 291 and 293.
[3] Quitman Naval Stores Co. et al. v. Conway, 63 Fla. 253, 58 So. 840 (1912), and Wilson Cypress Co. v. Logan, 120 Fla. 124, 162 So. 489 (1935).
[4] West Yellow Pine Co. v. Stephens, 80 Fla. 298, 86 So. 241 (1920).
[5] Armored Car Service, Inc. v. First National Bank of Miami, 114 So.2d 431 (Fla.App.3d, 1959).