PETERSON, Judge.
John M. Goodwin appeals the trial court’s entry of:
(a) Judgment denying relief on Count I of his complaint seeking rescission and cancellation.
(b) Judgment denying recovery on Count II seeking damages for breach of contract; judgment was entered after a jury trial and denial of a motion for directed verdict.
(c) Judgment denying recovery on Count IV seeking damages for professional negligence and legal malpractice af *1009 ter a jury awarded Goodwin a partial recovery and the trial court granted defendant’s motion for directed verdict.
(d) Judgment denying recovery on Count Y for breach of fiduciary duty as an escrow agent; procedurally, the denial followed the same route as in (c), above.
(e) Judgment denying recovery on Count VII for conversion after the trial court granted a motion for summary judgment.
We affirm all judgments except the latter two. We vacate a portion of the judgment denying recovery on Count V and vacate the judgment on Count VII of Goodwin’s third amended complaint, and remand for further proceedings.
Goodwin’s 138-paragraph complaint portrays a purchaser whose opportunity to make a large profit upon resale of 323 acres of Lake County land, part of which was planted in orange trees, was frustrated by the disastrous freeze of January 1982. In 1981, Goodwin, an experienced and sophisticated real estate investor from Maine, attended a Florida Real Estate Exchange meeting where he learned about the land. It had sold in 1979 for $600,000 and now was available for about $300,000. The bargain was not without complexities, however, and Goodwin learned that he would have to act within a few days to secure an assignment of a purchase contract that would soon expire. He learned, inter alia, that the previous owner, Michael S. Alexa-tos, held a purchase money mortgage on the land, that the mortgagor was in default, and that a superior mortgage was also in default. Goodwin decided to use Alexatos’ attorney, L. Danner Hiers, to represent him in the transaction even though he knew that Hiers would also act as Alexatos’ attorney. Goodwin retained Hiers because he was familiar with the title to the lands. Hiers explained to Goodwin that either a deed in lieu of foreclosure or a mortgage foreclosure was required to place title back in Alexatos and that, to eliminate clouds and to perfect title, other instruments and actions would be required, including lien satisfactions, a mortgage assumption, and interim debt servicing. Goodwin then executed a contract for purchase and sale with Alexatos on September 29, 1981, and closed the transaction on October 9, 1981, with a purchase price of $295,374.09.
It was understood at closing that the clouds on the title still required clearing, but no written understanding was prepared as to what was required by each of the parties, nor were written directions prepared regarding disbursement of $10,-927.11 that Goodwin had paid into Hiers’ trust account. It is undisputed that Hiers began taking steps to clear the title. On October 13, 1981, Hiers disbursed monies to Alexatos as seller, to his law firm for attorney’s fees, and to satisfy outstanding ad valorem tax certificates. Goodwin paid $28,125.91 directly to the first mortgagee to satisfy delinquent loan installments and paid $1,350 per month for seven months to Hiers’ trust account for Goodwin’s purchase money mortgage to Alexatos. These payments equaled the exact amount of payments owed in turn by Alexatos to a bank. The bank had lent funds to Alexatos using as security the mortgage that Hiers was endeavoring to foreclose or satisfy through a deed in lieu of foreclosure. Goodwin directed these monthly payments to Hiers rather than to Alexatos to ensure that the bank received the payments.
In January 1982, a freeze visited Florida, but the effect upon the orange trees was not known for several months; the effect was devastating in fact to the extent that the value of the lands was reduced by approximately $200,000. On May 10, 1982, Goodwin abruptly demanded of Hiers a return of the money he “put into [the lands],” citing as the reasons the alleged but disputed previous offer by Hiers that he, evidently personally, would refund Goodwin’s money at any time he became dissatisfied with the deal,[1] that he intended to move the property rapidly after closing, and that, *1010 although progress had been made in clearing the title, Goodwin still did not have clear title seven months after the closing. Hiers responded to the letter by denying that any promise of refund was made by him. Needless to say, he also withdrew as Goodwin’s attorney. It was learned later at trial that in late April 1982 the most important impediment to closing was overcome upon Hiers’ receipt of the deed in lieu of foreclosure. During the seven-month period about which Goodwin complained, no claims, defaults, or additional impediments to closing occurred that would have resulted in an insurmountable or costly conclusion to the task of clearing title.
Goodwin then filed his complaint which contained eight counts as amended. The complaint requested rescission and cancellation and alleged breach of contract against Alexatos. It requested an accounting and alleged negligence, malpractice, and breach of fiduciary duty as escrow agent against Hiers. It also alleged constructive fraud, conversion, and civil theft against both defendants. The jury found for Alexatos on the breach of contract claim. It awarded Goodwin $49,946 after finding him sixty percent comparatively negligent on the negligence and malpractice claims and awarded Goodwin $18,820 on the breach of fiduciary duty claim. The trial court directed verdicts for the defendants after receiving the jury verdicts and after reserving the right to do so during trial.
Our review of the record indicates that Goodwin’s damages were caused by his own abrupt, unilateral decision to call a halt to Hiers’ further efforts to eliminate the impediments to clear title. The only arguable and possibly material negligence on Hiers’ part may have been the seven months that passed without his perfecting title; but there never existed any agreement as to a deadline. Further, testimony at trial indicated that the foreclosure initiated by Hiers with full knowledge by the parties to the transaction was aggressively contested until the title holder’s decision to grant the deed in lieu of foreclosure. Even the delivery of that deed was delayed through no fault of Hiers because one of the signatories was outside the United States. Goodwin’s intentions to remarket the property may have been frustrated by the expiration of the seven months, but the testimony at trial did not indicate that any attempted resale had been lost or that the delay caused any expense that would not have been incurred had the title been cleared within a few months after the closing.
Goodwin says that he had $53,543.02 less at the end of the transaction than he did when he entered into it and has nothing to show for it. To recover that amount, it was his burden to prove that Hiers’ negligence was the proximate cause of that loss. The proximate cause was Goodwin’s decision to abandon the transaction, not any delay allegedly caused by Hiers. Even if Hiers had been slow in eliminating the clouds on the title, the delay must still be the proximate cause of Goodwin’s damages. Lawyers Professional Liability Ins. Co. v. McKenzie, 470 So.2d 752 (Fla. 3d DCA 1985); Graham v. Holler, 499 So.2d 62 (Fla. 5th DCA 1986). It is also appropriate to make the observation that when acts of third parties are required, lawyers cannot control, with any degree of precision, the timeliness of performance.
We do agree with Goodwin that the trial court erred in two matters:
(1) In Count V of the complaint, Goodwin sought damages against Hiers for breach of duty as escrow agent. He alleged that Hiers breached either a duty of care by disbursing some escrow funds or an alleged oral agreement not to disburse money to Alexatos until the deed to the purchased land had been recorded. While we agree with the trial court that acts of negligence on Hiers’ part were not a legal cause of Goodwin’s damages, whether there was an agreement that Hiers would not disburse funds to Alexatos until the deed was recorded was a factual question. Hiers testified that he was authorized by Goodwin to disburse the escrow funds in accordance with the closing statement. Goodwin testified that Hiers had agreed that Alexa-tos would not receive any money until the *1011 deed was recorded. The jury resolved this question in favor of Goodwin. It was un-controverted that Hiers had funds remaining in his trust account, and it appears that those funds represent monies paid for title insurance (neither a commitment nor a policy was ever issued) and recording fees partially paid by Goodwin. Therefore, we reverse the directed verdict on Count V in favor of Hiers and direct the trial court to enter judgment in favor of Goodwin for:
The amount disbursed to Alexatos as proceeds of the sale: $4,238.81
Undisbursed recording charges: $ 810.90
Title insurance that was not issued: $ 812.50
$5,862.21
We remand this cause to the trial court to enter judgment against Hiers in favor of Goodwin for $5,862.21. This amount shall be credited against the amount, if any, subsequently found to be due by Hiers on remand of Count VII for conversion.
(2) In Count VII of his complaint, Goodwin alleged that Hiers converted Goodwin’s funds by disbursing them without authorization. He also alleged that Alexatos converted the funds by wrongfully retaining them after they were wrongfully disbursed to him. Apparently, the trial court granted summary judgment in favor of the defendants on this count based upon the mistaken belief that Belford Trucking Co. v. Zagar, 243 So.2d 646 (Fla. 4th DCA 1970), controlled the issue. In Belford, the court seemed to hold that an action for conversion is not available as a remedy for money wrongfully withheld. However, Belford involved breach of contract and is inappo-site.
Conversion is an act of dominion wrongfully asserted over, and inconsistent with, another’s possessory rights in personal property. Williams Management Enter., Inc. v. Buonauro, 489 So.2d 160 (Fla. 5th DCA 1986). A cause of action for conversion lies where it is alleged that a lawyer wrongfully retained in his trust account money belonging to his client. Restiro v. Anderson & Anderson, P.A., 453 So.2d 1167 (Fla. 4th DCA 1984), rev. denied, 461 So.2d 113 (Fla.1985). A conversion action is also available as a remedy where money is wrongfully withdrawn from a bank account. Allen v. Gordon, 429 So.2d 369 (Fla. 1st DCA 1983). In the instant case, Goodwin stated a cause of action by alleging that the attorney wrongfully retained some escrow funds and that he disbursed other escrow funds contrary to the oral escrow agreement. Goodwin also stated a cause of action against Alexa-tos in alleging that some of the allegedly wrongfully disbursed funds were disbursed to Alexatos. The recipient of converted property is liable to the rightful owner in an action for conversion. See Wilson Cypress Co. v. Logan, 120 Fla. 124, 162 So. 489 (1935). Since Goodwin stated a cause of action for conversion and since a question of material fact was in dispute, summary judgment should not have been granted. See Fla.R.Civ.P. 1.510. The summary judgments in favor of Hiers and Alexatos denied Goodwin a trial on the merits of the conversion claims, and we reverse those judgments.
AFFIRMED in part; VACATED in part; and REMANDED.
COBB and GOSHORN, JJ., concur.
ON MOTION FOR CLARIFICATION
Both Goodwin and Hiers suggest that our opinion needs clarification to guide them in the proceedings upon remand. We find merit in their suggestions only as to the following:
1. Hiers argues that, since Goodwin recovered $5,862.21 on count five for breach of fiduciary duty or escrow agreement, the $9,450 in payments to the bank was not recoverable under that count and that therefore it was not recoverable under count seven for conversion. Hiers also argues that he could not have converted the sum of $28,125.91 sought as damages for checks written by Goodwin directly to the bank for mortgage payments and delivered by Hiers to the payee bank. Thus, he contends, $5,862.21 is the maximum amount recoverable under count seven for *1012 conversion, and since Goodwin made that recovery under count five, the trial court’s summary judgment denying recovery for conversion was harmless error. Hiers interprets our remand on the conversion count as suggesting that Goodwin can recover damages in the conversion claim over and above the $5,862.21 damages awarded under the count for breach of escrow duty. We make no suggestion regarding the amount, if any, recoverable under count seven. Upon further proceedings after remand, an award, if any, may be made for less, the same, or more than the $5,862.21 awarded on count five. Our intent was and is to ensure that, if liability is found under the conversion count, a double recovery under the two counts does not occur. We simply have set aside the trial court’s summary judgment and remanded for further proceedings on that count.
2. Hiers also points out that we overlooked the case management order that required the $1,744.83 in Hiers’ trust account to remain there pending the outcome of Alexatos’ counterclaim. It was not brought to our attention in the briefs, and while we do make an effort to remain cognizant of the entire record on appeal, we expect the parties to bring to our attention those matters that they believe are significant. We feel certain that the parties will bring to the attention of the trial court that this sum must be disbursed by subsequent order, at which time the trial court can determine the appropriate recipient and award the proper credit.
The remaining requests for clarification and rehearing are denied.
GOSHORN, C.J., and COBB, J., concur.

. This unique reason was not alleged as a basis for recovery in Goodwin’s third amended complaint, nor was Hiers sued for an alleged breach of contract on this theory.