673 So.2d 68 (1996)
AMERISEAL OF NORTH EAST FLORIDA, INC., Appellant,
v.
Harold R. LEIFFER, et al., Appellee.
No. 95-565.
District Court of Appeal of Florida, Fifth District.
March 29, 1996.
Rehearing Denied May 7, 1996.
*69 Matt G. Firestone of Matt G. Firestone, P.A., Orlando, for Appellant.
Donald L. O'Dell of McDonough, O'Dell, Wieland & Williams, Orlando, for Appellee Hadley, Gardner & Ornstein, P.A., f/k/a Owen & Hadley, P.A.
Elmo R. Hoffman of Brownlee, Hoffman & Jacobs, P.A., Orlando, for Appellee Kathleen A. Ellis.
No Appearance for Appellee, Harold R. Leiffer.
HARRIS, Judge.
The issue in this case is whether a notary, and the law firm that employs her, may be held liable for damages resulting from an improper notarization.
Section 117.05(5) provides:
A notary public may not notarize a signature on a document unless he or she personally knows, or has satisfactory evidence, that the person whose signature is to be notarized is the individual who is described in and who is executing the instrument. A notary public shall certify in the certificate of acknowledgement or jurat the type of identification, either based on personal knowledge or other form of identification, upon which the notary public is relying.
Kathleen Ellis, a notary, was an employee of the law firm of Hadley, Gardner and Ornstein, P.A.[1] It is not disputed that upon the request of Harold Leiffer, she notarized the signatures of Mark Paradiso and Ronald Prupis on documents reflecting that Paradiso and Prupis were agents of Indiana Lumberman's Mutual Insurance Company (Lumberman's). There were two problems with these documents. One, Paradiso and Prupis were not the agents of Lumberman's; two, neither Paradiso nor Prupis were known to Ellis nor did they appear before her and swear to the truth of the information contained in the documents.
Ameriseal of North East Florida, Inc. paid $70,000 in premiums to Leiffer to secure the bonds represented by these improperly notarized and unauthorized documents, but when Lumberman's subsequently denied having issued or authorized the bonds, Ameriseal lost its contract with the State of Florida when substitute bonds could not be obtained within the limited time schedule.
Ameriseal sued Harold Leiffer as well as Ellis and the law firm. It obtained a default judgment against Leiffer because of his fraud, but a summary judgment was entered on behalf of Ellis and the law firm apparently because the court found that the improper notarization was not the proximate cause of Ameriseal's losses.
We agree that before the improper notarization is actionable, it must constitute or be part of the proximate cause of the injury. But Ameriseal would not have been injured (at least according to its affidavit) by Leiffer's fraud alone. "But for" the notary's action in affirming that Paradiso and Prupis identified themselves and represented, under oath, that they were the agents of Lumberman's, the bonds would not have been purchased. Indeed, being able to rely on *70 documents is the purpose of having them notarized.
Appellees assert that even if Paradiso and Prupis had appeared before Ellis and sworn as to their authority, still the bonds would have been invalid because the affiants lacked actual authority. First, Paradiso and Prupis might have been unwilling to swear falsely, thereby exposing themselves to criminal responsibility and second, had they signed, they, and not the notary, would be civilly liable for any loss.
Appellees further justify no liability because Ameriseal purchased other invalid bonds not bearing Ellis' notary. Certainly neither she nor her employer are liable for the damages resulting from those bonds but some other notary and some other employer might be. The misconduct of others does not immunize Ellis and her employer from damages resulting from her misconduct.
This is an appeal from a summary judgment. Carter's affidavit alleged:
3. That he is the individual that made the decision, on behalf of Ameriseal of Northeast Florida, Inc., to accept the bonds delivered by Harold Leiffer and Mid-South Insurance Consultants, Inc., which bonds are the subject of this lawsuit.
4. That Harold Leiffer told him that Ronald Prupis, one of the individuals that had signed these bonds, was the agent for and power of attorney for Indiana Lumberman's Mutual Insurance Company.
5. That he relied upon the notarization of Ronald Prupis' signature as confirmation that Mr. Prupis actually signed the bonds.
6. That he was never told anything regarding Mark Paradiso's affiliation with Indiana Lumberman's Mutual Insurance Company but relied upon the statements in the bond indicating that Mark Paradiso was the "Florida Resident Agent" for this company.
7. That he relied upon the notarization of Mark Paradiso's signature as confirmation that Mr. Paradiso actually signed the bonds.
8. That he believed that Harold Leiffer did not have the authority to bind Indiana Lumberman's Mutual Insurance Company to any bonds by his signature alone.
9. That had these bonds been executed only by Harold Leiffer, he would not have believed these bonds to be authentic, would not have paid premiums for these bonds and would not have submitted these bonds to third parties as authentic bonds.
At least for the purpose of considering whether summary judgment is appropriate, this affidavit properly raises an issue of fact as to whether Ameriseal suffered damages by relying on Ellis' notarization. And the fact that Paradiso and Prupis might have appeared before Ellis and lied about their connection with Lumberman's is irrelevant because they did not so appear and they did not lie. Equally irrelevant is the fact that other notaries may have violated their statutory duties. Here, we are concerned with Ellis' statutory duty. And liability in this case does not depend on Ellis being an "insurer or guarantor" of the documents. Ellis' obligation as a notary is quite simple: she must either know or have properly identified the affiants that appear before her and she must administer the proper oath. If business cannot depend on notaries doing this simple task, then there is no place for notaries in the world of commerce.
REVERSED for further action consistent with this opinion.
GOSHORN, J., concurs.
W. SHARP, J., dissents, with opinion.
W. SHARP, Judge, dissenting.
I would affirm the summary judgments in favor of Kathleen Ellis, a notary, and her former employer, the law firm of Hadley, Gardner and Ornstein, P.A. In this case, Kathleen improperly notarized the signature of two purported insurance agents on payment and performance bonds purchased by Ameriseal because they did not personally appear before her. The bonds were, in fact, fraudulent because the purported signatories were not authorized to bind the surety. While Kathleen's improper notarization may have played some role in this scheme, I agree with the trial judge that it was not the proximate cause of Ameriseal's losses.
*71 Ameriseal, a striping and painting contractor, was required to obtain payment and performance bonds for its road projects with the state of Florida. Melvin Carter, the vice-president of Ameriseal, spoke with the company's insurance agent who referred him to Harold "Bud" Leiffer. Leiffer represented that he was an authorized agent of certain insurance companies, including Indiana Lumberman's Mutual Insurance Company. Ameriseal paid Leiffer over $70,000 in premiums to secure bonds from Indiana Lumberman's. The bonds had a raised corporate seal and the signatures of individuals listed as "agents" for Indiana Lumberman's.
Leiffer took four of these bonds to the law firm where his wife was a secretary to the senior partner. Kathleen, who was a friend of Mrs. Leiffer, also worked at this law firm as a "runner" doing various odd jobs. Leiffer asked Kathleen to notarize the documents for him as a personal favor. The documents were in stacks. Leiffer had clipped them together and flagged the areas where Kathleen needed to sign her notary. Kathleen thought she was notarizing Leiffer's signature.
In fact, Kathleen notarized the signature of Mark Paradiso, who apparently signed as the "Florida Resident Agent" for Indiana Lumberman's and the signature of Ronald Prupis, who also apparently signed as agent and attorney in fact for Indiana Lumberman's. In fact, Prupis had been terminated as an authorized bonding agent earlier and Paradiso had never been an authorized insurance agent for the company. Thus, the bonds were not issued by Indiana Lumberman's and the company refused to honor them. Ameriseal was unable to obtain substitute bonds and lost the profit on the projects covered by the bonds.
Ameriseal filed suit against Leiffer, Kathleen, the law firm and others. A default was obtained against Leiffer for over $350,000. Ameriseal's claims against Kathleen[1] and the law firm were based on section 117.05, which provides for the uses and unlawful uses of a notary commission.[2]
Section 117.05(5), Florida Statutes (Supp. 1992) provides that a notary public may not take the acknowledgement of an instrument unless he or she personally knows or has satisfactory evidence that the person making the acknowledgement is the individual who is described in and who is executing the instrument. Section 117.05(6) provides that a notary may not notarize a signature on a document if the person whose signature is being notarized is not in the presence of the notary at the time this signature is notarized.[3] Section 117.05(7) provides for liability on the part of the notary's employer:
The employer of a notary public shall be liable to the persons involved for all damages proximately caused by the notary's official misconduct, if the notary public was acting within the scope of his employment at the time he engaged in the official misconduct.
The trial court entered summary judgment in the defendants' favor on the basis that Kathleen's negligence was not the proximate cause of Ameriseal's losses. The court also denied Ameriseal leave to amend to add a count for negligent misrepresentation on the grounds that any such count would be subject to summary judgment in favor of the defendants for the same reason, that is, that it was not the proximate cause of Ameriseal's losses.
In my view, this case is similar to Gardner v. Weiler, 630 So.2d 670 (Fla. 4th DCA 1994). In that case, a seller was fraudulently induced (apparently by her own attorney) to sign a warranty deed. The seller actually signed the instrument but it was notarized in her absence by the notary. The notary lacked any knowledge that the conveyance notarized was fraudulent. The seller sued *72 and obtained a jury verdict against the notary, arguing that the improper notarization proximately caused her damage because it allowed the instrument to be recorded in the public records, thus aiding the buyer's scheme.
On appeal, the fourth district concluded that the notarization was too tenuously related to the seller's damage or loss to constitute legal proximate cause:
We do not think that a notary's acknowledgment of the seller's execution on a warranty deed, which had been fraudulently constructed by the buyer to effect a transaction different from the one actually agreed between seller and buyer, is a substantial cause of the seller's loss. It may have played a role. It may have been the predicate for recordation. It may be traced in the web of circumstances from the one to the other. But it is not the proximate cause of her loss. (emphasis in original)
630 So.2d at 670-671. See also Goodwin v. Alexatos, 584 So.2d 1007 (Fla. 5th DCA 1991), rev. denied, 595 So.2d 556 (Fla.1992) (attorneys were not liable for alleged professional malpractice for delay in eliminating clouds on title to property purchased, which purchaser intended to resell, where the cause of the purchaser's damages was his own, abrupt, unilateral decision to abandon the transaction); Lawyers Professional Liability Insurance v. McKenzie, 470 So.2d 752 (Fla. 3d DCA 1985) (attorney hired by mortgagee to foreclose on property was not liable for legal malpractice even though his negligence in providing legal description of the property caused the judicial sale to be set aside and before the second judicial sale, the mortgagor was able to sell the property; the mortgagee received a satisfaction of her mortgage and the attorney's negligence was not the proximate cause of her failure to get the property back).
Here Carter purchased the bonds from Bud Leiffer, who represented that he was an authorized agent for Indiana Lumberman's. Carter dealt exclusively with Leiffer, not Prupis or Paradiso. Although Leiffer told Carter that Prupis was an agent and had power of attorney for Indiana Lumberman's, Carter was never told anything about Paradiso and never asked anything about him. Carter purchased over twenty bonds from Leiffer but Kathleen only notarized signatures on four of the bonds.
While Kathleen's improper notarization may have played some role in Leiffer's scheme to defraud Ameriseal, in my view it is too tenuous to constitute the proximate cause of Ameriseal's losses. At best, Carter's reliance on Kathleen's notarization was minimal. Even if Paradiso and Prupis had been properly before Kathleen and their signatures properly notarized, the bonds would have still been fraudulent because they were not authorized to bind the surety. Ameriseal would still have suffered its losses. To hold a notary liable for damages resulting from any breach of duty, however remote and tenuous, would in effect make the notary the insuror or guarantor of a document and its authenticity. While there may be cases in which the notary's breach of duty is the proximate cause of loss, this, in my view, is not one of them.
NOTES
[1] Section 117.05(7):

The employer of a notary public shall be liable to the persons involved for all damages proximately caused by the notary's official misconduct, if the notary public was acting within the scope of his employment at the time he engaged in the official misconduct.
[1] A claim had already been made against Kathleen's notary bond. The Legislature requires notaries to post a bond in the amount of $5,000.00 payable to "any individual harmed as a result of the breach of duty by the notary ..." § 117.01(7)(a); Fla.Stat. (Supp.1992).
[2] The Legislature limits the fees of notaries to $10.00 (except for performing marriages). § 117.05(2), Fla.Stat. (Supp.1992).
[3] I note parenthetically that section 117.05 was later amended to impose a $5,000.00 penalty for this infraction. § 117.05(6)(a), Fla.Stat. (1993).