738 So.2d 993 (1999)
AMERISEAL OF NORTH EAST FLORIDA, INC., Appellant,
v.
Harold R. LEIFFER, et al., Appellee.
No. 98-3512.
District Court of Appeal of Florida, Fifth District.
July 16, 1999.
Rehearing/Certification Denied August 27, 1999.
*994 Matt G. Firestone of Matt G. Firestone, P.A., Orlando, for Appellant.
Donald L. O'Dell of Meier, Lengauer, Bonner, Muszynski & Doyle, P.A., Orlando, for Appellee Hadley, Gardner & Ornstein, P.A., etc.
Elmo R. Hoffman of The Hoffman Law Firm, P.A., Orlando, for Appellee Kathleen A. Ellis.
No Appearance for Appellees Harold R. Leiffer, Mid-South Insurance Consultants, Inc., and Universal Surety of America, Inc.
W. SHARP, J.
Ameriseal of Northeast Florida, Inc. appeals from final judgments in favor of Kathleen Ellis and her former employer, Hadley, Gardner & Ornstein, P.A., in a suit for damages allegedly caused by Ellis' violation of the notary public statute.[1] Following a three-day trial, at the conclusion of the plaintiff's case, the court directed a verdict in favor of the defendants. The trial court concluded that as to Ellis, her misconduct was too tenuous to constitute a proximate cause of the plaintiffs damages and that as to the employer-law firm, the plaintiff failed to prove a prima facie case that Ellis was acting within the scope of her employment when she executed the faulty notarizations, as is required by section 117.05(7). We affirm on the first ground.
Ameriseal argues that the trial court erred in directing a verdict on the first ground because it is contrary to the "law of the case." However, the doctrine of the "law of the case" only bars reconsideration of an issue previously reviewed on the merits. Stroble v. State, 689 So.2d 1089 (Fla. 5th DCA), rev. denied, 697 So.2d 512 (Fla.1997). In a prior appeal,[2] this court held that there was a material question of fact whether Ameriseal's damages were caused by its reliance on Ellis' notarization of signatures of persons claiming to be agents of a surety company when those persons did not personally appear before her.
In that appeal, this court held that an affidavit executed by Carter, the vice-president of Ameriseal, created the material fact question for purposes of the summary judgment. In his affidavit, Carter alleged he relied on Harold Leiffer's statements (the person who carried out the scheme of selling Ameriseal fraudulent bonds) that Ronald Prupis was an authorized agent for Indiana Lumbermen's Mutual Insurance Company, and on the statements in other bonds that Mark Paradiso was an authorized agent for the same company. For both situations, Carter further alleged he relied on the notarization of those individual's signatures "as confirmation that the individuals had actually signed the bonds" in accepting the bonds as valid.
*995 Following the trial on remand, the court below directed a verdict in favor of Ellis and her former employer. Although similar, summary judgments and directed verdicts are not identical. Summary judgment proceedings are pre-trial in character. Their purpose is to avoid the time and expense of a useless trial if it clearly appears from the pleadings, affidavits, depositions and other evidence in the record that there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Quilling v. County of Sumter, Florida, 726 So.2d 795 (Fla. 5th DCA 1999); Gutierrez v. Bermudez, 540 So.2d 888 (Fla. 5th DCA 1989).
Once the trial commences, the defendant then tests the sufficiency of the plaintiff's evidence by a motion for directed verdict. Gutierrez. A motion for directed verdict should be granted when there is no reasonable evidence upon which a jury could legally predicate a verdict in favor of the non-moving party. Cecile Resort Ltd. v. Hokanson, 729 So.2d 446 (Fla. 5th DCA 1999); Leyte-Vidal v. Murray, 523 So.2d 1266 (Fla. 5th DCA 1988).
In the previous appeal, this court merely reversed a pre-trial ruling. Based on Carter's affidavit, in which he stated that he had relied on Ellis' notarization, this court concluded that there was a genuine issue of material fact on the issue of proximate cause. The opinion, however, did not otherwise comment on the merits of the cause nor did it preclude the court from ruling on the sufficiency of the evidence presented at trial. See Warren v. Palm Beach County, 528 So.2d 413 (Fla. 4th DCA), cause dismissed, 537 So.2d 570 (Fla.1988) (order reversing grant of summary judgment on ground that material questions still remain did not conclusively establish any points of law under the law of the case doctrine); Lauck v. Publix Market, Inc., 335 So.2d 589 (Fla. 3d DCA 1976) (opinion reversing summary judgment should not be construed as commenting otherwise on the merits of the cause).
At the trial, Carter testified that Leiffer had mentioned either Prupis or Paradiso to him in connection with the bonds Leiffer was (unbeknownst to him) fraudulently executing and selling to Ameriseal. Carter admitted he did not verify or check on Prupis' or Paradiso's authority to bind the surety. He admitted his company had purchased and accepted many other fraudulent bonds from Leiffer, which caused his company no loss because the contracts had been successfully completed before the fraud was discovered.
The four fraudulent bonds involved in this case related to contracts with the Department of Transportation, as did all of the others, but these four had not been performed before the state discovered the forgeries and fraud. Since the state required surety bonds on its contracts, it terminated Ameriseal's contracts and required it to obtain valid bonds within a five-day time period, which Ameriseal was unable to do. Some of the other bonds had been notarized by Ellis, some by Leiffer, and some by another unknown notary named Lenny (or Lettie) Neilson.
On cross-examination, Carter said that had Leiffer notarized the four bonds in this case, he would have accepted them, as he had the others. He agreed he relied on the fact that the bonds were notarized by someone, and he admitted he had primarily relied on and trusted Leiffer. It did not matter to him whether Ellis or Leiffer or some other person notarized them. He agreed that the real problem with the bonds was not that they had been improperly notarized, but that they simply were "no good;" i.e., the agents who allegedly signed the bonds were not authorized to do so.
There is no doubt that the notary statute was breached by Ellis. She trusted Leiffer's statement that she was notarizing his own signature and did not check the documents to see that she was, in fact, notarizing the signatures of persons not before her and unknown to her (Prupis and Paradiso). But she was a small cog in the wheel of the fraudulent bond business constructed by Leiffer. Had she not notarized *996 the bonds, Leiffer clearly would have executed or forged an improper notarization, and that would have made no difference to Carter. He would have accepted them in any event. Based on his own admissions, Ellis' notarizations were not the cause of his acceptance of the bonds as valid. Rather it was his trust and faith in Leiffer over a two-year long course of dealing.
AFFIRMED.
GOSHORN and GRIFFIN, JJ., concur.
NOTES
[1] § 117.05, Fla. Stat. (Supp.1992).
[2] Ameriseal of North East Florida, Inc. v. Leiffer, 673 So.2d 68 (Fla. 5th DCA), rev. denied, 680 So.2d 422 (Fla.1996).