PERLMAN, SANDRA J., Associate Judge.
Appellants,[1] a collection of entities owning and operating a hotel (collectively referred to as “Landlord”), appeal from a final judgment holding Landlord liable for wrongful eviction and conversion. The central issue in this case is whether the trial court erred by directing a verdict in favor of the appellee, Nantucket Enterprises, Inc. (“Tenant”), on its claim for wrongful eviction. Landlord also appeals the damages awarded for -wrongful eviction and conversion. Tenant cross-appeals the trial court’s denial of prejudgment interest. We conclude that the trial court did not err in directing a verdict in Tenant’s favor. We further conclude that the wrongful eviction damages were based on competent substantial evidence. However, we reverse the award of conversion damages and the denial of prejudgment interest.
Tenant leased 20,281 square feet of space within an Embassy Suites Hotel from Landlord under the terms of a written lease agreement. The leased space was comprised of several distinct areas within Landlord’s hotel: (1) a restaurant area, *44 lounge, and kitchen facility (8,730 square feet); (2) an atrium and gazebo (1,950 square feet); (3) a ballroom area (8,165 square feet); and (4) two boardrooms (1,436 square feet).
The parties’ lease provided that:
[I]f and whenever any Event of Default by Tenant shall occur, Landlord may after the continued Tenant default after the expiration of the time to cure ... at its option and without further written notice to Tenant, in addition to all other remedies given hereunder or by law or equity, do any one or more of the following: (i) terminate the Lease, in which event Tenant shall immediately surrender possession of the Leased Premises to Landlord; (ii) enter upon and take possession of the Leased Premises and expel or remove Tenant and any other occupant therefrom with or without having terminated the lease .... Landlord shall not be deemed to have violated any right of Tenant and shall not be deemed to be guilty of trespass, conversion or any other criminal or civil action as a resujt of such action.
Tenant began renovating the restaurant area but failed to acquire the correct building permits required by the City of Palm Beach Gardens. As a result, the City closed the restaurant and placed red tags on the doors, which indicated the restaurant was unsafe for occupancy. The same day, Landlord placed chains and locks on the doors to the kitchen area, the restaurant area, and Tenant’s back offices. A few days later, Landlord terminated the lease agreement and had the police escort Tenant’s employees from the restaurant. At that point, Tenant ceased to operate its business on the leasehold premises.
The parties filed multiple claims against each other. Ultimately, Landlord’s claim for breach of lease and Tenant’s claims for wrongful eviction and conversion were tried before a jury. During the trial, Tenant moved for a directed verdict on its wrongful eviction claim, arguing that Landlord improperly used self-help to lock Tenant out of the entire leased premises. The trial court entered a directed verdict, finding that Tenant was wrongfully evicted from the entire 20,281 square foot lease premises. Consequently, the jury was limited to a determination of damages, and awarded Tenant $8.8 million in damages on its wrongful eviction claim as well as $2 million on its conversion claim. The jury found in favor of Tenant on Landlord’s claim for breach of lease.
We write first to address Landlord’s argument that the lower court should not have entered a directed verdict in Tenant’s favor on the wrongful eviction claim.
A trial court’s ruling on a motion for directed verdict is reviewed de novo. Meruelo v. Mark Andrew of Palm Beaches, Ltd., 12 So.3d 247, 250 (Fla. 4th DCA 2009). “When an appellate court reviews the grant of a directed verdict, it must view the evidence and all inferences of fact in a light most favorable to the nonmoving party, and can affirm a directed verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party.” Frenz Enters., Inc. v. Port Everglades, 746 So.2d 498, 502 (Fla. 4th DCA 1999).
Landlord argues that the parties’ lease agreement authorized Landlord to engage in self-help. Section 83.06(2), Florida Statutes (2006), provides that:
(2) The landlord shall recover possession of rented premises only:
(a) In an action for possession under s. 83.20, or other civil action in which the issue of right of possession is determined;
*45 (b) When the tenant has surrendered possession of the rented premises to the landlord; or
(c) When the tenant has abandoned the rented premises.
(emphasis added).
Notably, the statute provides that a landlord may obtain possession of its leased premises only under the following conditions: (1) by court order granting a landlord possession; (2) when the tenant surrenders the premises to the landlord; or (3) when the tenant abandons the leasehold. See id. These are the “only” methods of recovering possession and it is undisputed that none of these methods occurred in this case. See Herrell v. Seyfarth, Shaw, Fairweather & Geraldson, 491 So.2d 1173, 1175 (Fla. 1st DCA 1986) (“The effect of the amendment to section 83.05 is to abrogate the landlord’s right to obtain possession—unless he files an action for possession under section 83.20, or other civil action—in every case in which the tenant remains on the premises after having been given the notice provided in section 83.20(2).”).[2] Accordingly, Landlord was not entitled to use self-help even though it was authorized by the terms of the parties’ lease.
We likewise reject Landlord’s argument that its termination of the lease ended Tenant’s possessory interest in the leased premises. See Sheradsky v. Basadre, 452 So.2d 599, 603 (Fla. 3d DCA 1984) (stating that wrongful eviction is “a tort not dependent upon the existence of a valid ... lease”). Landlord’s termination of the lease did not serve to dispossess Tenant and relieve Landlord of its obligation to institute an action for possession and obtain a final determination that Landlord was entitled to possession.
Finally, in support of its argument that a directed verdict was improper, Landlord argues that the facts established only that Tenant was partially evicted because Landlord’s actions locked Tenant only out of the restaurant. Although the issue of whether a tenant can be “partially evicted” appears to be an issue of first impression in Florida, we need not address it here. The undisputed facts show Landlord asked the police to escort Tenant’s employees off of the leased premises without a court order. There was no evidence to support Landlord’s contention that it intended to allow Tenant to use that part of the leasehold beyond the restaurant, or that Tenant could still maintain its other business operations without the restaurant.
Next, we find that Landlord’s arguments as to the amount of damages awarded on the wrongful eviction claim to be without merit and affirm without further comment.
With regard to the damages on the conversion claim, Landlord argues the evidence did not support the jury’s $2 million award for conversion. Tenant responds that the jury could have based its award on the following: catering contracts worth $500,000; the newly remodeled space worth $1.7 million; exclusive food and beverage rights; various fixtures and personal property such as tables, chairs, and kitchen equipment; and food and liquor worth $45,000.
 “Conversion is defined as ‘an act of dominion wrongfully asserted over, and inconsistent with, another’s possessory rights in personal property.’” Joseph v. Chanin, 940 So.2d 483, 486 (Fla. 4th DCA 2006) (quoting Goodwin v. Alexatos, 584 So.2d 1007, 1011 (Fla. 5th DCA 1991)). First, Landlord did not convert Tenant’s *46 catering contracts because Landlord did not assert “dominion” over the catering contract. See id. Second, Landlord did not convert the newly remodeled space because real property cannot be converted. See Am. Int’l Land Corp. v. Hanna, 323 So.2d 567, 569 (Fla. 1975). Third, Landlord did not convert Tenant’s food and beverage rights because Tenant’s claim would be breach of contract, not conversion, and “an action in tort is inappropriate where the basis of the suit is a contract, either express or implied.” Belford Trucking Co. v. Zagar, 243 So.2d 646, 648 (Fla. 4th DCA 1970). Finally, aside from the testimony that $45,000 of food and liquor had been converted, Tenant failed to offer any evidence as to the value of its fixtures and personal property when that property was converted. See Colangelo v. Stone Flex, Inc. of Fla., 551 So.2d 565, 566 (Fla. 4th DCA 1989) (reversing where the “record d[id] not contain evidence from which the court could determine the value at the time of the conversion of the items converted”).
For these reasons, we reverse the award of conversion damages. See Emerald Pointe Prop. Owners’ Ass’n v. Commercial Constr. Indus., Inc., 978 So.2d 873, 880 (Fla. 4th DCA 2008); see also Teca, Inc. v. WM-TAB, Inc., 726 So.2d 828, 830 (Fla. 4th DCA 1999) (“Because there was no proof at trial under the correct measure of damages, we reverse the final judgment and remand for the entry of a judgment for the defendants.”). Granted, there was evidence that $45,000 in food and liquor was converted, but we nonetheless reverse because the general verdict form failed to indicate the jury awarded damages for the food and liquor. The Tenant may not now have a second opportunity to prove damages because its general verdict form combined what were in fact several distinct conversion claims. See Sheffield v. Superior Ins. Co., 800 So.2d 197, 202 (Fla. 2001) (“[A] party may not make or invite error at trial and then take advantage of the error on appeal.”) (citations omitted).
Finally, Tenant cross-appeals the lower court’s denial of prejudgment interest. Because this issue presents a pure issue of law, our review is de novo. See Bosem v. Musa Holdings, Inc., 46 So.3d 42, 44 (Fla. 2010).
“Florida has adopted the position that prejudgment interest is merely another element of pecuniary damages.” Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 214 (Fla. 1985). “ ‘[I]t has long been the law in Florida that in contract actions, and in certain tort cases, once the amount of damages is determined, prejudgment interest is allowed from the date of the loss or the accrual of cause of action.’” Bosem, 46 So.3d at 46 (quoting Amerace Corp. v. Stallings, 823 So.2d 110, 116 (Fla. 2002) (Pariente, J., dissenting)).
In all cases, either of tort or contract, where the loss is wholly pecuniary, and may be fixed as of a definite time, interest should be allowed as a matter of right, whether the loss is liquidated or unliquidated. ... [T]he plaintiff will not be fully compensated unless he receive, not only the value of what he has lost, but receive it as nearly as may be as of the date of his loss.
Id. (alteration in original) (quoting William B. Hale, The Law of Damages, § 67 (2d ed. 1912)). Where a party is entitled to prejudgment interest, the trial court is without discretion to deny it. See id. at 45.
In the present case, Tenant’s damages were “wholly pecuniary” and were “fixed” at the time of the wrongful eviction. See id. As such, Tenant was entitled to prejudgment interest and the trial court was without discretion to deny it.
*47 In summary, we affirm the directed verdict and damages award for Tenant’s claim for wrongful eviction. However, we reverse the damages awarded for conversion. Finally, as to Tenant’s cross-appeal, we reverse and remand for a calculation of the prejudgment interest to be awarded.

Affirmed in part, reversed in part, and remanded.

DAMOORGIAN and FORST, JJ., concur.

. Appellants are Palm Beach Florida Hotel and Office Building, LP; Ashford TRS Lessee II, LLC; Remington Lodging & Hospitality, LLC; and Remington Lodging & Hospitality, LP.

. The parties stipulated that no abandonment or surrender occurred.